Tommy Hutcheson d/b/a Mountaineer Homes; and Mountaineer Homes, Inc., sued Fleetwood Enterprises, Inc. ("Fleetwood"), and Roger Mitchell, alleging fraud, breach of contract and "bad faith," after Hutcheson was terminated as a Fleetwood mobile-home retailer. The trial court entered a summary judgment on the breach-of-contract and bad-faith claims asserted by Hutcheson and Mountaineer Homes, Inc. On the fraud claim, a jury awarded Hutcheson and Mountaineer Homes, Inc., $63,100 in compensatory damages and $189,300 (three times the compensatory damages) in punitive damages. Fleetwood and Mitchell appealed, arguing that they were entitled to a judgment as a matter of law because, they contended, there was a total absence of proof of a false representation and Hutcheson had failed to offer legally adequate evidence of any damage. We reverse and render a judgment for Fleetwood and Mitchell.
 Facts
Hutcheson started a retail mobile home business in Spruce Pine, Alabama, in 1989. At that time, Hutcheson entered into retail agreements with Fleetwood, a mobile-home manufacturer. Hutcheson worked with Fleetwood under annual retail agreements, the last of which expired in January 1995. Hutcheson continued to sell Fleetwood homes after the retail agreement expired. The agreements provided Fleetwood retailers, such as Hutcheson, with geographical protection from competing Fleetwood dealers. The retailers were provided with maps that highlighted their protected areas.
Hutcheson's original territory included Franklin, Lawrence, Winston, and Marion Counties. However, in 1994, Fleetwood notified Hutcheson that his customer-satisfaction-index ("CSI") had decreased 40%, and it informed him that because of the decrease it was reducing his protected territory to include only Franklin County. Hutcheson brought his CSI up to 100% by 1996. The last agreement between the parties included a map that indicated Hutcheson's protected area was Franklin County. However, Hutcheson claims that *Page 922 
Fleetwood indicated to him that he would regain his original territory once his CSI increased.
In the summer of 1996, Hutcheson opened a mobile-home business in Moulton, in Lawrence County. The evidence suggests that Tom Humphries, a Fleetwood representative, told Hutcheson he would need to obtain Fleetwood's approval before taking any Fleetwood mobile homes to the Moulton lot. Roger Mitchell, a sales manager for Fleetwood, testified that he told Hutcheson not to move any Fleetwood mobile homes to the Moulton lot. On August 19, 1996, after Hutcheson had moved five Fleetwood mobile homes to Moulton, Mitchell sent Hutcheson a letter that stated:
"Dear Tommy,
 "You contacted me a few weeks ago and inquired about placing Fleetwood products at your new Moulton, Al. location. This sales center is located in BTA #108, some twenty-three to twenty-five miles from Reagin Homes in Decatur, Al. After discussing this issue with Jason Reagin, I called you back to confirm that no Fleetwood product should be moved to Moulton.
 "Today Jason informed me that Westons, Oaklands, and Value Elites were at Moulton. Tommy, as discussed on the phone, we request that you remove the Fleetwood products from Moulton by 6:00 P.M. August 26th. I have discussed this issue with Hank Haklin, Eastern Region Retail Marketing Director. Hank agreed that we would have to discontinue our business relationship with you at Spruce Pine if you did not remove the Moulton homes by August 26th.
 "Tommy, we hope that you will reconsider your options and remain a Fleetwood retailer in Spruce Pine, Al."
On August 23, 1996, Mitchell wrote Hutcheson again:
"Dear Mr. Hutcheson:
 "This letter is to serve as a follow up to our phone conversation. We have serialized documentation of the five homes that you pulled to Moulton, Alabama. You have assured us that no other Fleetwood homes will go to Moulton. In the spirit of working with you, we have extended the time period through September 30th, 1996, to have those homes sold or pulled back to Spruce Pine.
 "Tommy, life is too short for `show down' business activity. You know that I would be just as firm if another Retailer tried to pull Fleetwood brands into Franklin County with you achieving 45 to 50% market share as you are. Please contact me should you have any question."
On September 21, 1996, Hutcheson met with Fleetwood representatives Mitchell and Mike Sullivan to discuss his providing Fleetwood mobile homes in Moulton. A letter from Mitchell to Hutcheson dated September 25, 1996, but postmarked October 2, 1996, states:
"Dear Tommy,
 "Thank you for your time and positive attitude on Saturday, September 21. This letter serves as a recap of our meeting on Saturday with Mike Sullivan of Plant # 25.
 "I. Marion and Winston counties fall in BTA # 44, Birmingham, AL. The present Fleetwood marketing strategy, through December of 1997, does not call for a sales center to be located in Marion or Winston County. We will reevaluate our progress in late 1997 to determine whether or not another sales center should be added in one or both of these rural counties. You will be notified in writing and given equal opportunity *Page 923 
to grow with Fleetwood should the market determine an additional sales center is needed.
 "II. Mountaineer Homes will remain the only Fleetwood sales center in Franklin County as long as the following performance requirements are met by Mountaineer Homes.
 "A. 75% or better CSI (year to date you are an outstanding 100%!)
"B. 35% FEI market share by year end, 1997.
 "C. Maintain an inventory consisting of a minimum of 60% FEI products.
 "III. Mountaineer will remove the three Fleetwood Homes inventoried in Moulton, Al. by day's end September 30, 1996.
 "IV. Fleetwood will continue to ship homes to your sales center in Spruce Pine, Al. We look forward to working with you for many years to come.
 "Tommy, I appreciate your constructive attitude. Enjoy your trip to Hawaii."
Hutcheson had sold three of the Fleetwood mobile homes before the September 1996 meeting. Hutcheson did not move the remaining mobile homes from the Moulton lot until October 3 or 4, 1996. He claims that although he intended to move the two remaining Fleetwood mobile homes before the September 30, 1996, deadline, he wanted and demanded a letter confirming what had transpired at the meeting. On October 18, 1996, Hutcheson received a letter terminating his business relationship with Fleetwood.
 Standard of Review
We review a trial court's denial of a motion for a judgment as a matter of law by the same standard we applied to an order denying the motion formerly known as a motion for a directed verdict. Winn Dixie ofMontgomery, Inc. v. Colburn, 709 So.2d 1222, 1223 n. 1 (Ala. 1998). "The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position." K.S. v.Carr, 618 So.2d 707, 713 (Ala. 1993). "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). We have held:
 "Upon review of a motion for a directed verdict or a JNOV, evidence must be viewed in the light most favorable to the nonmoving party, and if reasonable inferences in favor of the plaintiff's claim can be drawn from the evidence, the motion must be denied. Zaharavich v. Clingerman, 529 So.2d 978, 980 (Ala. 1988)."
Woodruff v. Johnson, 560 So.2d 1040, 1041 (Ala. 1990).
 Discussion
With regard to his fraud claim, Hutcheson and Mountaineer argue that Fleetwood informed Hutcheson in March 1994 that his territory was being reduced because his "customer service index" had fallen. Hutcheson testified that he was led to believe that if he raised his CSI, then his original territory, which had included Moulton, would be restored. "The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence."Brushwitz v. Ezell, 757 So.2d 423, 429 (Ala. 2000). The parties executed their last retail agreement in March 1994. It was effective from January 1994 through January 1995. Attached *Page 924 
to the retail agreement was a map showing Hutcheson's protected territory — Franklin County — shaded out. Fleetwood's former sales manager, Roger Mitchell, testified that this map would have still been in effect even though the agreement to which it was attached had expired. Hutcheson testified that Mike Sullivan, a Fleetwood employee, indicated to him that if he got his CSI up, then Fleetwood would restore his original territory. There was a genuine issue of material fact as to whether Fleetwood misrepresented to Hutcheson that his original territory would be restored once he got his CSI up.
Hutcheson claims that, in reliance on Fleetwood's representation that he would receive his original territory if his CSI increased, he increased his CSI and moved some Fleetwood Homes to Moulton. In order to prevail on his fraud claim, Hutcheson must prove that he reasonably relied on Fleetwood's representations. Hutcheson testified that in May or June 1996, he had a discussion with Tom Humphries about taking some Fleetwood Homes to his new lot in Moulton. Hutcheson testified as follows:
 "Q. Okay. And did you ask [Humphries] about taking Fleetwoods over there?
 "A. I told him I was gonna take Fleetwoods and he said he was going through the transfer, he wasn't the man in charge there but he was gonna do that job. Of course Roger is gonna do the job. Two people here had the same job. I don't know who had it really but he said, `I don't know. I don't think it would be a problem.'
 "Q. In effect, he said that he was not the one that could make that call, isn't that correct?
". . . .
 "A. . . . I told [Humphries] what we was doing, and we went to lunch at Taylor's restaurant right up here. After we got eating I told what I was gonna do and he followed me to Moulton. We were out there looking and I don't think Tom meant nothing about it, he said, `I don't know. I will have to check on it. I don't see no problem.'
". . . .
 "Q. Isn't it correct, and you do not dispute, that Tom Humphries did not give you permission or tell you, `Yes, you may take Fleetwood homes to Moulton'?
"A. No, he did not say `Yes.'"
Humphries testified as follows:
 "Q. What happened when you got to Moulton, Mr. Humphries?
 "A. Tommy showed me an undeveloped piece of property and explained that he not only wanted to open a sales center there, he would like to carry the Fleetwood product.
 "Q. And did you have a discussion with him regarding his plans or was that all that was said?
 "A. At that point I told Tommy it wouldn't be right for me to make that decision, that I had passed the gavel, that that decision should be make by my replacement, Mike Sullivan and, of course working in conjunction with Roger Mitchell."
Mitchell testified that Hutcheson telephoned him and told him that he was going to start a business in Moulton and wanted to sell Fleetwood homes at his new business. He testified that he told Hutcheson he would call Joel Reagin, a Fleetwood dealer in Decatur, to "see if he minded if Tommy brought products up there that Joel Reagin was not handling." Mitchell testified that when Reagin objected, stating that Moulton was closer to his area, Fleetwood decided not to give the Moulton *Page 925 
territory to anyone at that time. Mitchell also gave the following testimony:
 "Q. . . . When y'all first discussed that issue, that is, him wanting to take homes to Moulton, was he asking you for Fleetwood's blessing in doing that?
"A. Yes, he was.
 "Q. Did that indicate to you that he knew Moulton was not his territory?
"A. Absolutely."
The facts suggests that Fleetwood, through its employees Humphries and Mitchell, had indicated to Hutcheson that he should not move any Fleetwood homes to the Moulton lot. These facts do not support Hutcheson's contention that he reasonably relied on Fleetwood's representation (that his original territory would be restored if his CSI increased) when he moved the Fleetwood homes to Moulton. Even if we assume that Fleetwood did lead Hutcheson to believe that he would automatically regain his original territory when his CSI increased, Hutcheson could not have reasonably relied on that representation when he moved the homes to Moulton, because Humphries and Mitchell had indicated to him before he moved the homes to Moulton that the Moulton area was disputed territory. Thus, we conclude that the evidence does not support a finding that Hutcheson reasonably relied on the alleged misrepresentations of Fleetwood's representatives.
We further conclude that Hutcheson has not demonstrated that the alleged misrepresentation proximately caused the damage he alleges. To the contrary, the evidence suggests that Hutcheson knew or should have known, through his conversations with Humphries and Mitchell, that he needed Fleetwood's approval before moving Fleetwood homes to Moulton.
Hutcheson argues that the jury had before it ample evidence from which it could have found that Fleetwood did not disclose its true intentions and motives to Hutcheson when he and Fleetwood representatives met in 1996, after Hutcheson had received the letter asking him to take the Fleetwood homes he had in Moulton back to Spruce Pines or else risk having his business relationship with Fleetwood terminated. In support of this contention, Hutcheson states in his brief that "Roger Mitchell acknowledged that the primary reason for Fleetwood's termination of Hutcheson was the fact that he initially moved houses to Moulton, not
that he failed to move them from Moulton." (Emphasis original.) Thus, Hutcheson argues that his moving the Fleetwood home to Moulton was the factor that triggered his termination, and, consequently, that Fleetwood's actions were deceitful because, he argues, the factor that triggered Hutcheson's termination had occurred before Fleetwood sent the letters in August 1996. He claims that Fleetwood induced him to rely on the representations made in the August 1996 letters and at the September 1996 meeting, in order to avoid being terminated, but that Fleetwood had already decided to terminate him for taking the homes to Moulton in the summer of 1996. Mitchell actually testified as follows regarding Hutcheson's termination:
 "Q. Why was Mr. Hutcheson terminated, Mr. Mitchell, if you know?
 "A. Because he went against out request — numerous requests just bullheadedly went over there and pulled houses in an area that was an area that shouldn't have been a location.
 "Q. So, he was terminated for taking houses to Lawrence County?
"A: I would think that's the primary reason, yes, sir.
 "Q: Had nothing to do, then, with the fact [that] he failed to remove the homes by September 30th? *Page 926 
"A. That had something to do with it I would say, yes.
"Q. How much did that have to do with it, Mr. Mitchell?
"A. Probably a lot.
 "Q. Well, is it the fact [that] he did not remove the homes or that he took the homes over there to begin with?
"A. A combination of both."
Mitchell further testified on recross-examination that if Hutcheson had moved the homes by September 30, 1996, as he had agreed to do, then he would not have been terminated as a retailer with Fleetwood.
We find in the record no substantial evidence to support a finding that when the parties met in September 1996 Fleetwood already intended to terminate Hutcheson for moving Fleetwood homes to Moulton, regardless of whether he moved the homes back to Spruce Pines before the September 30, 1996, deadline. Nothing in the record suggests that Hutcheson's relationship with Fleetwood would have been terminated even if he had removed the mobile homes from the Moulton lot by the September 30, 1996, deadline.
Hutcheson did not present substantial evidence of fraud. Therefore, Fleetwood and Mitchell were entitled to a judgment as a matter of law on the fraud claim. The judgment in favor of Hutcheson and Mountaineer is reversed, and a judgment is rendered in favor of Fleetwood and Mitchell.
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in the result.