836 So.2d 804 (2002)
LINCOLN LOG HOME ENTERPRISES, INC.
v.
Tony AUTREY.
1000787.
Supreme Court of Alabama.
February 15, 2002.
Rehearing Denied May 10, 2002.
*805 William F. Patty and Daniel O. Rodgers of Beers, Anderson, Jackson, Hughes & Patty, P.C., Montgomery, for appellant.
Gaines C. McCorquodale of McCorquodale & McCorquodale, Jackson, for appellee.
SEE, Justice.
Tony Autrey contracted with Lincoln Log Homes of the South ("Lincoln") to build a log house for Autrey. Lincoln purchases log-home kits from Lincoln Log Home Enterprises, Inc. ("Enterprises"), a North Carolina company, and then hires a contractor to construct the log house on the customer's land and in accordance with Enterprises' instruction manuals. The kits include the logs for the house and the blueprintsin this case, the blueprints were customized for Autrey's house. Lincoln's owners had attended a training seminar conducted by Enterprises at which they were taught how to market and build Lincoln Log houses.
Once construction of Autrey's house began, he had problems with the quality of the construction. The foundation was not level; that caused other problems, including doors and windows that did not fit properly, poorly installed plasterboard and poorly finished walls, and inferior wiring. Before the house was completed, Autrey had the house inspected; the inspectors pronounced it substandard, and Autrey ordered Lincoln to stop work on the house.
Autrey had made a partial payment on the house prior to the inspection. When he refused to pay the balance of the contract price, Lincoln sued, alleging breach of contract and conversion. Autrey counter claimed against both Lincoln and Enterprises, alleging breach of contract, breach of implied warranty, negligence, and fraud.[1] The case went to a jury, which found against Lincoln and Enterprises on all counts and awarded Autrey compensatory damages of $505,000 and punitive damages of $600,000. The trial court issued a judgment on the jury verdict and Enterprises alone appeals.
Enterprises argues (1) that the trial court erred in denying its motion for a judgment as a matter of law ("JML") and in submitting Autrey's claims to the jury, (2) that the trial court erred in allowing Autrey to call certain expert witnesses who were not properly disclosed to Enterprises during discovery, (3) that the jury-verdict forms were fatally defective in that they failed to differentiate between compensatory damages and punitive damages, and (4) that the awards of compensatory damages and punitive damages are inappropriate and excessive. Because we hold that the trial court erred in denying Enterprises' motion for a JML and in submitting Autrey's claims to the jury, we do not reach the other issues.
"`The standard of review applicable to [the denial of a motion for a JML] is whether the nonmoving party has presented substantial evidence in support of his position.' K.S. v. Carr, 618 So.2d 707, 713 (Ala.1993). `Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). We have held:
"`Upon review of a motion for a [JML], evidence must be viewed in *806 the light most favorable to the nonmoving party, and if reasonable inferences in favor of the plaintiff's claim can be drawn from the evidence, the motion must be denied. Zaharavich v. Clingerman, 529 So.2d 978, 980 (Ala.1988).'"
Fleetwood Enters., Inc. v. Hutcheson, 791 So.2d 920, 923 (Ala.2000). The trial court's denial of Enterprises' motion for a JML must therefore be considered in the light most favorable to Autrey; if he presented substantial evidence supporting his claims against Enterprises, that is, "evidence of such weight and quality that fair-minded persons" could reach a verdict in his favor, then we must affirm the denial of Enterprises' motion for a JML.
Enterprises claims that its motion for a JML should have been granted because, it argues, Autrey did not present substantial evidence of an agency relationship between Enterprises and Lincoln.
"Proof of an agency relationship ..., rather than an independent-contractor relationship, is critical to [Autrey's] action, because it is a `well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor.' Joseph Land & Co. v. Gresham, 603 So.2d 923, 926 (Ala.1992) (citing Fuller v. Tractor & Equip. Co., 545 So.2d 757 (Ala.1989); Butler [v. Aetna Fin. Co., 587 So.2d 308 (Ala.1991)])....
"Furthermore, `when a defendant's liability is based on the theory of agency, agency may not be presumed, and ... to [support a finding of liability] the plaintiff must present substantial evidence of an agency relationship. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala.1988).' Battles v. Ford Motor Credit Co., 597 So.2d 688, 689 (Ala.1992). The party asserting the existence of an agency relationship `"has the burden of adducing sufficient evidence to prove its existence."` Mardis v. Ford Motor Credit Co., 642 So.2d 701, 704 (Ala. 1994) (quoting Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986))."
Ex parte Wild Wild West Social Club, Inc., 806 So.2d 1235 (Ala.2001).
"The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. Williams v. Tennessee River Pulp & Paper Co., 442 So.2d 20 (Ala.1983)."
Wood v. Shell Oil Co., 495 So.2d 1034, 1036 (Ala.1986).
Evidence presented at trial indicated that Enterprises grants distributorships to sell its products. Mike Kennedy, one of Lincoln's owners, testified at trial that Enterprises had granted Lincoln a marketing area that consisted of 17 counties in Alabama and 4 counties in Mississippi. Kennedy also testified that at conferences Enterprises conducts in North Carolina, Enterprises trains its distributors to market and to build Lincoln Log houses, and that Enterprises furnishes a construction manual for its distributors to use.
Evidence at trial also indicated that Autrey had ordered a special customized house plan for his Lincoln Log house. Autrey's exhibit A, submitted at trial, was the three-page sales-order contract for Autrey's house. This sales order had the Lincoln Log Homes of the South logo at the top and included as the first item on the order form "1 custom `Stoneybrook' w/flat interior walls on pier foundation system as submitted and drafted by Lincoln Log Home Interprises [sic], Inc." The sales-order contract contained a list of special features to be included in the custom *807 house. Kennedy testified that Enterprises had drafted special blueprints for Autrey's house. After the blueprints were finalized, Enterprises assembled a kit for the house. The kit consisted of logs cut for the house and the specialized blueprints. Enterprises then shipped that kit to Lincoln.
Autrey presented no evidence indicating that Enterprises maintained any control over the manner in which Lincoln constructed the log house for Autrey. Enterprises' relationship with Lincoln appears from the evidence to have extended only to receiving orders for the log-house kits, drawing up blueprints and assembling the kits, then shipping those kits to its distributors. Enterprises does not oversee the construction of the log house, approve the contractors or subcontractors hired by the distributors to build the houses, or inspect or approve the completed houses. The evidence did not indicate that there was any contact between Enterprises and Lincoln regarding Autrey's house after Enterprises delivered the kit to Lincoln. Moreover, Autrey does not argue that the plans or any of the materials included in the kit were defective; instead, he argues that the method and manner of the construction of the house were defective from the foundation upward. That work was controlled by Lincoln, with no involvement with, or control by, Enterprises.
Because Autrey has not presented substantial evidence that Lincoln constructed Autrey's log house as Enterprises' agent, fair-minded persons could not reasonably infer the existence of an agency relationship extending to the construction of the log-kit houses. Therefore, Enterprises' motion for a JML on the ground that it had no agency relationship with Lincoln should have been granted. For that reason, we reverse the trial court's judgment and remand the case.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.
JOHNSTONE, Justice (concurring).
I concur. I note that, while Autrey pleaded a claim of implied warranty of "fitness and habitability" against Enterprises, the trial judge did not submit that claim to the jury, and the parties do not argue any implied-warranty issue to us.
NOTES
[1] Lincoln and Enterprises were represented by the same counsel at trial. Enterprises is represented by different counsel on appeal.