The parties divorced on March 24, 1981, in Wichita County, Texas. On October 19, 1993, the mother asked the Circuit Court of Houston County, Alabama, to modify the divorce judgment to increase child support, and to award post-minority support for the parties' then 17-year-old son. The father moved to dismiss the action, contending that the Alabama court lacked jurisdiction. Before ruling on the motion, the court ordered the parties to submit affidavits; on May 12, 1994, it denied the motion to dismiss.
After a hearing, the court increased child support and awarded post-minority education expenses, finding that the son had the aptitude for college work and that the father had adequate income to assist in the son's college expenses. The father was to contribute $350.00 per month toward the son's college expenses, beginning September 1, 1994, and continuing until the son reached age 19. At that time, previously ordered child support as to that child would cease, but the father's contribution to college expenses would increase to $650.00 per month until the son had completed four years of undergraduate education.
The father appeals, contending: (1) that the court lacked jurisdiction over him to modify the original judgment; (2) that the foreign judgment was never properly authenticated and/or domesticated in Alabama; and (3) that the court erred in requiring him to contribute to the oldest child's college expenses and in automatically increasing that amount for the future.
No testimony was taken on the jurisdiction question. Based on the affidavits of the parties, the court denied the father's motion to dismiss. By affidavit executed in Houston County, Alabama, the mother alleged the following facts. She met the father while they were attending Enterprise State Junior College in Enterprise, Alabama. The father had been a lifelong resident of Samson, Alabama. The parties eloped and were married in Georgia in 1970, and they moved immediately after their marriage to Georgia, where they resided until 1971, when they returned to Alabama. They lived in Alabama from 1971 until 1976; a son was born in Alabama in 1976. The father joined the United States Army, requiring the parties to move several times to different states. A daughter was born in 1978, and in April 1979 the father was transferred to Wichita County, Texas. As a result of a housing shortage, the mother and the two children returned to Alabama to live. She stated that the father "returned home" in June 1979 and told her that "there was someone else" and that he wanted a legal separation; they entered a separation agreement in Coffee County, Alabama. In July, the mother and children went to Texas to attempt reconciliation of the relationship, but she and the children returned to Alabama in August. She stated that, based on that brief visit, the Texas court exercised jurisdiction and entered a judgment of divorce. The mother alleged that "up to and including the date of . . . the entry of the Separation Order . . . the [father] had maintained Alabama as his state of residence" and that "for several years and up to and including at least the 1992 ad valorem tax year, the [father] owned and assessed for taxation a residence in Elmore County, Alabama."
By affidavit executed in Curry County, New Mexico, the father stated that the parties had lived together as husband and wife in the State of Alabama from 1972 to 1976, when he joined the Armed Forces. He went on to state that in August 1979 the parties entered a separation agreement in Coffee County, Alabama, and that they were divorced in March 1981 in Wichita County, Texas. On appeal, he argues that the court lacked personal jurisdiction, based on his contention that his only contact with this state is that his former wife and his children live here. We disagree.
"Alabama law allows courts to modify future installments of child support provisions in a sister state's divorce decree when the court has first obtained proper jurisdiction over the parties." Quebedeaux v. Lord, 599 So.2d 51, 52
(Ala.Civ.App. 1992). Rule 4.2(a)(1)(B), Ala.R.Civ.P., provides that out-of-state service is proper when the person *Page 1070 
has "sufficient contacts with this state." Rule 4.2(a)(2) states that "sufficient contacts" may include:
 "(H) living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising from alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state; or
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision . . . shall be deemed sufficient . . . so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
"The rule of 'minimum contacts' has generally been given broad interpretation." Ex parte Brislawn, 443 So.2d 32, 34
(Ala. 1983). Brislawn set forth the test for minimum contacts, quoting International Shoe Co. v. Washington, 326 U.S. 310,316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):
 " '[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "
Id. at 33. As in Brislawn, we must determine from the facts if the father had such contacts with this state that the maintenance of the action against him in this state would not offend "traditional notions of fair play and substantial justice."
The father cites Corcoran v. Corcoran, 353 So.2d 805, 809
(Ala.Civ.App. 1978), to support his argument that the trial court lacked jurisdiction. Corcoran is clearly distinguishable. The father's contacts with Alabama were sufficient for us to conclude that the trial court's exercise of jurisdiction over him was fair and reasonable.
Next, the father argues that the Texas divorce judgment was never properly domesticated or authenticated in Alabama. He argues that the record before the trial court contained no copy of the Texas divorce judgment and that, therefore, the trial court erred in modifying the Texas judgment; he contends that the Texas judgment had not been "authenticated" as prescribed by § 6-9-232, Ala. Code 1975.
In Taylor v. Taylor, 486 So.2d 1294, 1296 (Ala.Civ.App. 1986), similar facts were alleged. This court noted:
 "The best evidence of a judgment of the court of a sister state from a practical standpoint is a copy of the judgment which has been duly certified pursuant to the second sentence of Rule 44(a)(1), Alabama Rules of Civil Procedure, and, ordinarily, testimony of the contents of a trial court's judgment is not admissible since the original record, or a properly certified copy, is the best evidence of its official acts."
However, this court held in Taylor that testimony about the foreign divorce judgment that was not objected to proved the judgment as to child support, without a copy of the judgment being admitted into evidence.
The mother testified, without objection, that the parties were divorced in 1981 in Texas and that the divorce judgment ordered the father to pay $400 per month child support. The record also indicates that at the hearing the Texas divorce judgment was shown to the mother and that she testified about its contents without an objection to its authenticity.
Generally, illegal evidence admitted without objection is considered to have been properly admitted, and, when it is so admitted, "the trier of facts is free to consider it without limit as to weight or purpose." Id. at 1296.
As to post-minority education expenses, our Supreme Court held in Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989), that a trial court "may award sums of money out of the property and income of either or both parents for the post-minority education of a child of [a] dissolved marriage, when application is made therefor . . . before the child *Page 1071 
attains the age of majority." Before making such an award, the court must consider the financial resources of the parents and the child; the child's commitment to, and aptitude for, a college education; and whether the noncustodial parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship. Stanford v.Stanford, 628 So.2d 701, 703 (Ala.Civ.App. 1993). In addition, the court may consider the child's relationship with the parents and the standard of living the child would have enjoyed if the parents had not been divorced. Id.
The mother testified that although she has a master's degree and has taught school in the past, she has not worked since 1988. She did state, however, that she would be willing to go back to work to help contribute to her son's college education. She testified that the son had applied to college; that he wanted to be a physician; and that he "was a straight 'A' student," and that "He made three 'Bs' in four years."
The trial court's order states that the court found that the son had the aptitude for college work but it states that the court "does not find that the [father] is financially capable of providing a substantial portion of the [college] expenses requested and proven," which were estimated to be $26,479.50 per year. The court ordered the father to pay approximately one-third of those expenses. This award evidences that the trial court did consider the financial resources of the father and the other factors it is required to consider in regard to a request for post-minority support. Further, the father presented no evidence that this award would impose an undue hardship on him.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, MONROE and CRAWLEY, JJ., concur.