[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 409 
Donald E. Williamson, the health officer for the Alabama Department of Public Health ("the Department"), petitioned this Court for a writ of certiorari to review the Court of Civil Appeals' no-opinion affirmance of the Coffee Circuit Court's judgment reversing the Department's revocation of the license of Wynnwood Personal Care Home I ("Wynnwood") to operate as an assisted-living facility. Williamson v. Wynnwood Personal CareHome I (No. 2020365, October 3, 2003), 898 So.2d 925
(Ala.Civ.App. 2003) (table). We granted the petition on February 9, 2004, and we reverse and remand.
This case began when the Department, by letter dated September 28, 2000, notified Dottie Cummings, the administrator at Wynnwood, that it proposed revoking Wynnwood's license to operate as an assisted-living facility. Williamson appointed a private attorney to serve as hearing officer in the matter, and an evidentiary hearing was conducted on November 2 and 3, 2000. On January 16, 2001, the hearing officer entered a written opinion discussing in detail the testimonial and documentary evidence presented at the hearing. In pertinent part, the opinion of the hearing officer stated:
 "IT IS RECOMMENDED that the license issued to Wynnwood Personal Care Home [I] be revoked and/or that the State Health Officer consider the mitigating circumstances that residents at risk are no longer residing at Wynnwood and enter into discussions with Wynnwood for a result other than license revocation. The Hearing Officer is aware of the burden on the Department in monitoring assisted living facilities as there are only two employees in the assisted living unit. Two of the three cited deficiencies in the July survey were corrected by the removal of residents at risk, but there is also the long history of Wynnwood in not complying with its plan of care to correct the deficiencies found in the past."
The hearing officer's recommendations and the complete administrative record were subsequently submitted to Williamson. On February 12, 2001, Williamson entered an order essentially adopting the findings of the hearing officer and revoking Wynnwood's license. Wynnwood filed a notice of appeal with the Department on February 16, 2001, and, on February 21, 2001, filed a petition in the Coffee Circuit Court for review of the license-revocation order, pursuant to Ala. Code 1975, § 41-22-20. Wynnwood also filed a motion for a stay of the revocation order, which the circuit court granted. The Department subsequently sought expedited judicial review on the ground that an inspection of Wynnwood conducted on February 20, 2001, showed that the dangerous conditions that supported the license-revocation order continued to exist. The circuit court did not rule on the motion seeking an expedited review; it held oral argument on the matter on February 13, 2002. The circuit court required additional briefing and proposed orders from the parties, but it received *Page 410 
no new evidence. On December 16, 2002, the circuit court entered a 56-page order, which, the Department contends, was a copy of the proposed order submitted by Wynnwood,[1] followed by a four-page "Addendum and Brief of the Court"; the order reversed the Department's revocation of Wynnwood's license. In pertinent part, the circuit court's "Addendum and Brief of the Court" stated:
 "This case is before the Court on a petition for review from a ruling of the Alabama Department of Public Health which revoked the operating license of [Wynnwood], an assisted living facility. The judicial review of matters of this kind is governed by the Alabama Administrative Procedure Act, section 41-22-20, The Code of Alabama, 1975, as amended. The review must be confined strictly to matters of law and this Court cannot reweigh the evidence. Also, this Court cannot substitute its judgment for that of the agency. Id. The decision of the agency carries with it a presumption of correctness and should be upheld unless shown to be unreasonable, arbitrary or capricious. Further, while this Circuit Court does have the authority to reverse an agency decision that is clearly arbitrary, if a decision can be supported by substantial evidence, it must be upheld. However, difficulties present themselves when the evidence produced to support the decision of the agency is questioned on grounds of admissibility
and thereby becomes a `due process' issue.
 "Eddie May was the `surveyor' who investigated Wynnwood for the deficiencies from the rules and regulations of the State Department of Public Health. Mr. May is the Director of the Assisted Living Facility Unit. According to the petition of Wynnwood, Mr. May based much of his testimony on information and statements made by employees of Wynnwood he gathered while conducting his investigation. Specifically, and with regard to the July 2000 `survey' of Wynnwood, Mr. May testified about the door alarms at Wynnwood not being on when he arrived and about residents' `elopements' from the facilities. Mr. May testified that a Wynnwood employee, Betty Whitehurst, had told him about the position of the alarm system at his arrival. He further testified about what one employee told him she had overheard from another employee concerning residents leaving the facility. While the Administrative Procedure Act does relax the rules of evidence, it does not relax the rules to the point of allowing `DOUBLE HEARSAY' TO BE CONSIDERED. See Screws v. Ballard, 574 So.2d 827, 829 (Ala.Civ.App. 1990). The Act provides that in contested cases: `the rules of evidence [as] applied in nonjury civil cases in the circuit courts of this state shall be followed.' See section 41-22-13(1), the Code of Alabama, 1975, as amended. The agency argues that the statements made should be admitted under an exception to the hearsay rule, Ala.R.Evid. 801(d)(2)(C)-(D) admissions against party interest. However, these statements were made by agents of the principal, at best, but to be admissible, the statements must have been made within the scope of the authority conferred on the agent at the time the statements were made and within the exercise of such authority. See Slade v. City of Montgomery, 577 So.2d 887 (Ala. 1991). The employees were not in an administrative position with Wynnwood but rather *Page 411 
were members of the housekeeping staff and did not have even apparent authority to speak for the principal, i.e., Wynnwood. In a nonjury circuit civil trial, the statements testified to by Eddie May WOULD NOT have been admissible and, therefore, should not have been admitted in the administrative hearing.
 "If the statements of the employees of Wynnwood were not allowed, the deficiencies against Wynnwood would not be supported by `substantial evidence.' Allowing the consideration of clearly inadmissible testimony in a matter as serious as revoking the operating license of an assisted living facility is an obvious violation of the Constitutional `due process' rights of the owners and operators of Wynnwood.
 "While the evidentiary and `due process' issues are substantial, the Department of Public Health also faces another obstacle. Mr. May reported that he lost confidence in the management of Wynnwood and their abilities to follow the promulgated rules and regulations for the operation of an assisted living facility. However, the `sister' facility, Wynnwood II, which is owned and operated by the same people and located immediately next door was `surveyed' by a different person. Wynnwood II apparently operates in conjunction with Wynnwood as the residents of Wynnwood take their meals at Wynnwood II. The surveyor of that facility saw no reason to move to revoke its license. Based upon the same management, operation and probably at least shared staff, since the meals are common, it is POLITICALLY suspicious
that there is such a tremendous difference in the surveyor's results. Those facts alone should alert an independent fact-finder as to the possibility of problems but the facts are not to be reviewed by this Circuit Court. However, if the trial court finds that the decision was unreasonable, arbitrary or capricious, this Court is within its authority to overturn the agency's decision. Having two completely opposite conclusions based upon seemingly nearly identical facts, should raise the notion of capriciousness. However, the lack of admissible evidence is a sufficient basis to overturn the agency's decision under the Administrative Procedure Act and this Court so finds.
 "The Circuit Court of Coffee County, Enterprise Division, Alabama is within its authority to overturn the decision of the Alabama Department of Public Health based upon a lack of `substantial evidence' to support the findings in the order. Such lack of evidence results from the exclusion from consideration of hearsay testimony. Further, the revocation of the operation license that is not supported by substantial evidence is a violation of the Constitutional `due process `rights of the owners of Wynnwood."
(Emphasis and capitalization by the circuit court.)
The Department appealed to the Court of Civil Appeals, which affirmed the trial court's judgment without opinion, citingState Health Planning Agency v. Mobile Infirmary, 533 So.2d 255
(Ala.Civ.App. 1988); Waters v. City County of Montgomery Pers.Bd., 507 So.2d 951 (Ala.Civ.App. 1986); State Health Planning Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613
(Ala.Civ.App. 1985); and Alabama Bd. of Nursing v. Herrick,454 So.2d 1041 (Ala.Civ.App. 1984).
The circuit court in its "Addendum and Brief" adequately states the applicable standard of review — the circuit court may not reweigh the evidence and must affirm the Department's decision if *Page 412 
that decision is supported by substantial evidence; see alsoMobile Infirmary, 533 So.2d at 257; and State Health Planning Dev. Agency v. Baptist Health Sys., 766 So.2d 176
(Ala.Civ.App. 1999). We note further:
 "We review the judgment of the circuit court without any presumption of its correctness, since that court was in no better position to review the order of the Commission than are we. Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So.2d 409
(1949); Alabama Public Service Commission v. Consolidated Transport Co., 286 Ala. 323, 239 So.2d 753 (1970); Alabama Public Service Commission v. Chem-Haulers, Inc., 293 Ala. 677, 309 So.2d 453
(1975)."
Vann Express, Inc. v. Bee Line Express, Inc., 347 So.2d 1353,1356 (Ala. 1977). See also Colonial Mgmt. Group v. State HealthPlanning Dev. Agency, 853 So.2d 972 (Ala.Civ.App. 2002).
The record reveals that Wynnwood is a 16-bed licensed assisted-living facility owned and operated by Dwight Adams and Leslie Adams. Assisted-living facilities are residential health-care facilities for elderly persons or others whose physical or mental impairments are such that they need special assistance to engage in the ordinary activities of life. Wynnwood was licensed by the Department to operate an assisted-living facility in October 1990. The licensing rules promulgated by the Department require that assisted-living facilities "shall provide [residents with] necessary assistance with activities of daily living," including "assistance with personal safety." Ala. Admin. Code (Department of Public Health) Reg. 420-5-4.08(3)(c). Some of the residents at Wynnwood have reduced or impaired mental or cognitive functions and may not be able to exercise appropriate judgment concerning their safety, without supervision. Dwight Adams and Leslie Adams were aware that Wynnwood was required to take precautions against cognitively impaired residents' leaving the facility. Situations where cognitively impaired residents leave an assisted-living facility without the knowledge of the facility's personnel are termed "elopements" by the Department. The Department presented evidence that such elopements could be very dangerous, and possibly deadly, to residents who no longer had the mental capacity to recognize dangers from, for example, exposure to weather or other dangerous circumstances, such as traffic or open water. Wynnwood had installed alarms on the six entrance and exit points of the facility to warn Wynnwood employees when a resident attempted to exit the facility; the employees could then act to prevent that resident from wandering outside the facility and into possibly dangerous situations. Those alarms are controlled by a central panel.
At the November 2000 hearing before the hearing officer, the Department presented the testimony of Eddie May, a registered nurse and the director of the assisted-living-facility unit of the Division of Health-Care Facilities of the Department, who was assigned to investigate complaints in 1999 that Wynnwood's cognitively impaired residents had been permitted to leave Wynnwood's facilities without supervision or oversight. These investigators are sometimes referred to as "surveyors" for the Department. May testified that during his October 1999 investigation of Wynnwood, he discovered that at only one of the six exit points of the Wynnwood facility was an alarm set to give a warning sound when an exit was attempted. The alarms at the other five exits were not functioning. May stated that this presented a dangerous situation in which elopements could occur, and he prepared a deficiency *Page 413 
report on the form provided by the Department for that purpose, which set out the findings from his investigation. May testified that he conveyed his findings to the Wynnwood administrative staff and that the staff subsequently provided him with a plan of correction.
May's written report of the deficiencies at Wynnwood was admitted into evidence at the administrative hearing without objection; he summarized his report in his testimony, indicating that there had been seven elopements before he began his investigation. May also testified that he discussed with Dwight Adams plans for corrective actions concerning the elopements. As part of its corrective actions, Wynnwood provided the Department with written letters dated October 21 and 25, 1999, stating that it had agreed to maintain active alarms on all of the exit points at the facility at all times and to ensure that an employee responded to every alarm in order to be sure that there had been no attempted elopement; it also agreed that its employees and staff would regularly check the alarm control panel to be sure that all the alarms were functioning properly. The Department accepted Wynnwood's plan and conducted no further action with respect to the October 1999 investigation.
In July 2000, May was again assigned to investigate a complaint concerning Wynnwood that cognitively impaired residents were able to leave the facility without the knowledge of the staff or without being supervised by the staff. When May arrived at the facility on July 12, 2000, he ascertained that the front door had no functioning alarm; he also observed that the alarms to two other exit points were disengaged. May stated that he verified with a Wynnwood employee, Betty Whitehurst, that three of the six alarms were not functioning. Whitehurst also admitted in her testimony at the administrative hearing that although she was a cook, and not a nurse, she had given medications to residents on the morning of the hearing. She also testified, however, that the alarm on the front door sounded when May entered and that the alarms on all of the doors were active. The hearing officer found that Whitehurst's testimony lacked credibility.
May also testified that he was informed by the administrator at Wynnwood, Dottie Cummings, that the alarms on the doors were not always active. May testified that he asked Leslie Adams why the alarms were sometimes off and was informed that the alarms were no longer continuously engaged because those residents who had a tendency to wander had been discharged from the facility. On cross-examination at the administrative hearing, Adams testified that she had made a written notation about her conversation with May in July 2000; that notation was admitted into evidence. In pertinent part, that notation states:
 "Eddie May questioned me as to why the alarms were off when he entered the building. I told him that one resident was waiting for her daughter to take her out and the dining room alarm was off for that reason. The kitchen door was off because resident assistants went back and forth between buildings and I was not sure why the front alarm was off."
May also testified that two of Wynnwood's residents at the time of his July 2000 visit, Ms. F. and Ms. L., had recently eloped and that Leslie Adams had acknowledged that fact to him. May testified that he ascertained from the records of Wynnwood and the statements of Wynnwood employees that Ms. L. had a history of Alzheimer's disease since 1995 and that her physician had warned Wynnwood that she might engage *Page 414 
in wandering behavior. May also testified to an incident report by Wynnwood's staff in 1996 indicating that Ms. L. had wandered away from the facility and that she had engaged in such behavior after the October 1999 investigation.
In addition to discussing several other elopements, May's deficiency report noted that the Wynnwood staff had several times failed to report elopements to the management at Wynnwood. May's deficiency report detailing his July 2000 investigation was also admitted at the administrative hearing without objection. None of the elopements at Wynnwood resulted in harm to the residents. However, May did testify to elopements at other facilities that had resulted in death or serious injury to the resident who had left the facility. May also testified to incidents at Wynnwood in which medications were improperly administered to residents and to situations in which, he noted, dangerous cleaning substances were not properly secured when not being used. May testified that he was not biased against the Adamses and that he did not have any agenda to "get" the Adamses.
The Department also presented the testimony of Rick Harris, the director of the Department's Bureau of Health-Provider Standards. Harris testified as to the procedures pursuant to which Wynnwood was informed of the deficiencies May found. He also testified regarding the meetings with Wynnwood officials after May's July 2000 investigation and report and regarding the fact that Wynnwood and the Department were unable to agree to a satisfactory plan of corrective action by Wynnwood. Harris also testified that the Department's actions with respect to Wynnwood were consistent with its actions against other assisted-living facilities in similar circumstances. Harris stated that he was familiar with May and that May's investigative skills were excellent. Harris also denied that the Department had any bias or political agenda against Wynnwood.
Evidence was also elicited during the hearing that in April 2000 that the Department had investigated a companion facility located adjacent to Wynnwood, described as "Wynnwood II," also owned and operated by the Adamses, and found it to be in compliance with its regulations. Wynnwood presented the testimony of Leslie Adams, who stated her belief that at least one of the residents had discovered how to disengage the alarm system for the exit doors. Wynnwood also pointed out discrepancies in May's deficiency report showing that he had erred in noting which employees had told him that alarms were not engaged and that he had erred in describing the circumstances under which a Wynnwood employee had described the elopements of one of the residents. Wynnwood also presented evidence from various relatives of residents at Wynnwood that indicated that those relatives were satisfied with the level of care the residents were receiving. Wynnwood also offered letters and affidavits from local physicians and pastors of local churches stating their opinions that the residents at Wynnwood received good-quality care.
The critical question presented in this case is whether the trial court properly concluded that the evidence presented by the Department — consisting primarily of May's testimony and the reports he issued as a result of his investigations — did not constitute substantial evidence that would support the Department's revocation of Wynnwood's license.
The definition of "substantial evidence" is well settled:
 "`"Substantial evidence is evidence of such weight and quality that fair-minded *Page 415 
persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'"
Lincoln Log Home Enters., Inc. v. Autrey, 836 So.2d 804, 805
(Ala. 2002) (quoting Fleetwood Enters., Inc. v. Hutcheson,791 So.2d 920, 923 (Ala. 2000)). Our review of the circuit court's orders in this case shows that the circuit court rejected May's evidence on the basis that it was inadmissible hearsay and possibly because it concluded that it was the product of bias. However, May's testimony concerning his investigations of Wynnwood and May's reports that were generated as a result of those investigations were admitted into evidence without objection from Wynnwood. Although we agree with the circuit court that the rules of evidence are applicable to the administrative hearing in this case pursuant to Ala. Code 1975, § 41-22-13(1), we note that that provision also states, in pertinent part:
 "Except as hereinafter provided, objections to evidentiary offers may be made and shall be noted in the record. Whenever any evidence is excluded as inadmissible, all such evidence existing in written form shall remain a part of the record as an offer of proof. The party seeking the admission of oral testimony may make an offer of proof by means of a brief statement on the record describing the testimony excluded. All rulings on the admissibility of evidence shall be final and shall appear in the record. Subject to these requirements, when a hearing will be expedited and interests of the parties will not be prejudiced substantially, any part of the evidence may be received or may be required to be submitted in verified form; provided, the adversary party shall not be denied the right of cross-examination of the witness. The testimony of parties and witnesses shall be made under oath. Provided, however, in the hearing of a contested case where judicial review of the case is by trial de novo, the agency may announce that it shall not be necessary that objections be made during the hearing and upon such announcement, it shall not be required or necessary that objection to be made to any testimony or evidence which may be offered by either party, and on the consideration of such cases the agency shall consider only such testimony and evidence as is relevant, material, competent and legal, and shall not consider any testimony or evidence which is irrelevant, immaterial, incompetent or illegal, whether objection shall have been made thereto or not, and whether such testimony be brought out on direct, cross or re-direct examination, or is hearsay."
(Emphasis added.) This is not a case in which judicial review is by trial de novo, nor was there any announcement by the agency that objections would not be required in order to preserve for appeal an argument on the admission of evidence. Under these circumstances, it is plain that the rules of evidence concerning the necessity for an objection to preserve error are applicable in this case. Thus, we need not consider whether some of the evidence elicited from May was possibly inadmissible as hearsay or on some other basis; the law is settled that the admission of evidence without objection is not error, and that the trier of fact, here the hearing officer,
 "is not in error if inadmissible testimony comes in without objection and without a ruling thereon appearing in the record. The testimony is thus generally admissible and not limited as to weight or purpose. State v. Kennedy, 52 Ala.App. 470, 294 So.2d 439 (1974)." *Page 416 Ex parte Neal, 423 So.2d 850, 852 (Ala. 1982). See also Holleyv. Rane, 655 So.2d 1068 (Ala.Civ.App. 1995); and Campbell v.Talladega City Bd. of Educ., 628 So.2d 842 (Ala.Civ.App. 1993). Moreover, in the absence of an objection to the admissibility of the evidence presented by May, there was no issue on that point preserved for the circuit court's review on appeal. In a review of an administrative agency's decision, "the circuit court's jurisdiction was limited to a consideration of the issues properly raised and made of record before the Board." Joyner v.City of Bayou La Batre, 572 So.2d 492, 493 (Ala.Civ.App. 1990). See also Alabama Real Estate Appraisers Bd. v. Walker,739 So.2d 8 (Ala.Civ.App. 1997), reversed on other grounds,739 So.2d 14 (Ala. 1999); City of Homewood v. Caffee, 400 So.2d 375
(Ala. 1981); and Vining v. Board of Dental Exam'rs of Alabama,492 So.2d 607 (Ala.Civ.App. 1985). The failure to object to the admission of evidence results in a waiver on appeal of argument on that point.
 "`It is a generally accepted principle, as set forth in the Alabama Rules of Evidence, that a party against whom inadmissible evidence is offered must make a formal, specific objection.' 1 Charles W. Gamble, McElroy's Alabama Evidence § 426.01(1) (5th ed. 1996) (citing Rule 103(a), Ala.R.Evid.). The objection must also be timely. See Rule 103(a), Ala.R.Evid.; General Motors Corp. v. Johnston, 592 So.2d 1054, 1057-58 (Ala. 1992) (holding that, where the defendant did not object before the plaintiff's expert testified, the defendant's motion to strike that witness's testimony, made after the close of the plaintiff's case, was insufficient to preserve for appellate review an alleged error regarding the admission of that testimony). `Such an objection is a condition precedent to the party's effectual complaint on appeal against the reception of such evidence.' Gamble, McElroy's Alabama Evidence § 426.01(1)."
Radford v. State, 783 So.2d 13, 15 (Ala. 2000). See alsoWatson v. McGee, 348 So.2d 461 (Ala. 1977); and Anthony v.Anthony, 582 So.2d 1121 (Ala.Civ.App. 1991).
We therefore conclude, under the circumstances of this case, that all of the evidence presented by the Department through May's testimony and his deficiency reports was properly considered by the hearing officer. Further, we conclude that that evidence, which includes May's personal observations in addition to evidence Wynnwood characterizes as hearsay, constitutes substantial evidence within the definition set out in LincolnLog Home Enterprises, supra. With respect to bias, the hearing officer found:
 "There was the continuous inference by the defense and its witnesses that this investigation and its result had been motivated by political reasons. There was, however, no testimony to support these inferences and allegations. Other investigations conducted by RN [registered nurse] May were discussed and/or events relating to injuries of residents who eloped from facilities. There was no evidence that RN May had previously been biased in his investigation of other facilities. There was nothing but speculation and innuendos to show that RN May was not truthful in the statement of deficiencies and his recommendation that the license of Wynnwood I be revoked."
(Emphasis added.) The inferences that the circuit judge implied in its order and the addendum and brief that May's testimony and reports were not credible because of May's bias would go to the weight of that evidence, and, as noted, the circuit court is not authorized to reweigh the evidence or to substitute its decisions as to *Page 417 
the weight and credibility of the evidence for those of the agency. Ex parte Beverly Enters. Alabama, Inc., 812 So.2d 1189
(Ala. 2001); Baptist Health System, supra.
The trial court's order also implies that the Department's regulations are unconstitutionally vague because the provisions requiring assisted-living facilities to provide their residents with "necessary assistance in activities of daily living" and "assistance with personal safety" do not specify that cognitively impaired residents should be supervised to prevent them from wandering away from the facility and becoming lost and because those regulations do not precisely define the term "elopement." We hold that the circuit court's conclusion in this regard is erroneous because due-process requirements do not, and could not, require that an agency's safety rules be drafted to address every conceivable situation that might arise in treating cognitively impaired residents.
 "So long as the [agency regulation] affords a reasonable warning of the proscribed conduct in light of common understanding and practices, it will pass constitutional muster. United States v. Petrillo, 332 U.S. 1, 4, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947)."
Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230, 233 (5th Cir. 1974). More specifically,
 "if regulatory language `provides a sufficiently definite warning so that the conduct sought to be prohibited may be ascertained or comprehended within the common meaning of words or practices, such language will not be held to be unconstitutionally vague.' Delavan v. Board of Dental Examiners, 620 So.2d [13] at 18 [(Ala.Civ.App. 1992)] (quoting Board of Dental Examiners v. King, 364 So.2d 311, 316 (Ala.Civ.App. 1977), reversed on other grounds, 364 So.2d 318 (Ala.), on remand, 364 So.2d 319
(Ala.Civ.App. 1978))."
Kid's Stuff Learning Ctr., Inc. v. State Dep't of Human Res.,660 So.2d 613, 619 (Ala.Civ.App. 1995).
Although we might simply conclude that the Department's regulations concerning the safety of Wynnwood's residents provide adequate notice to Wynnwood that it should act to prevent its cognitively impaired residents from placing themselves in danger, in this case Wynnwood had direct and specific notice that the Department interpreted its regulations to require Wynnwood to take appropriate steps to prevent such residents from wandering away from the facility without supervision. That is, the 1999 investigation and deficiency report and the resultant plan of correction undertaken by Wynnwood show plainly that it understood the application of the Department's rules to situations where it allowed its cognitively impaired residents to leave the facility without the knowledge of the staff.
In Kid's Stuff Learning Center, supra, the Court of Civil Appeals considered the appeal of the Kid's Stuff Learning Center ("KSLC"), a children's day-care facility, from the circuit court's affirmance of the revocation by the Department of Human Resources ("DHR") of KSLC's license to operate. DHR had based its revocation on numerous violations of its standards concerning children/staff ratios and the grouping of children; supervision of children; feeding programs; and requirements for equipment, sanitation, reporting, and record-keeping. In its appeal, KSLC argued, among other things, that certain of DHR's regulations were unconstitutionally vague because they did not properly inform KSLC of its specific duties. The court noted that KSLC had previously had its license revoked for similar violations of the same regulations and had subsequently *Page 418 
had the license reinstated based upon its plan of compliance with those regulations. 660 So.2d at 618. Thus, with respect to KSLC's argument that DHR's standard concerning a change in ownership required it to notify DHR whenever it changed program directors was unconstitutionally vague, the court noted that KSLC could not argue that the regulation was unconstitutionally vague when it had actual notice of DHR's application of the regulation. The same rationale applies in this case. Even if Wynnwood could assert that the Department's safety regulations do not properly inform it of the Department's requirements concerning elopements, the facts show that it received actual notice of those requirements as a result of the 1999 investigation and that it acknowledged those specific requirements in its plan of corrective action. Under these circumstances, Wynnwood cannot now argue that the regulation as applied to it is unconstitutionally vague.
For the reasons discussed above, we conclude that the Department's revocation of Wynnwood's license is supported by substantial evidence and that the Department's regulations as applied to Wynnwood are not unconstitutionally vague. Accordingly, the Court of Civil Appeals' no-opinion affirmance of the trial court's judgment reversing the Department's revocation must be reversed, and the cause is remanded to the Court of Civil Appeals for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
[1] Wynnwood's proposed order was submitted as a word-processing document on a computer floppy disk, and the text of that document is not included in the record.