PITTMAN, Judge.
The Alabama State Personnel Board (“the board”) appeals from a judgment of the Montgomery Circuit Court (“the circuit court”) reversing an order- of the board that upheld the dismissal of Margaret D., McGowan from her employment with the Alabama Department of Finance (“the DOF”). We reverse the circuit court’s judgment and remand the cause with instructions.
In 2012, the DOF dismissed McGowan from her position-as a staff accountant in the Comptroller’s Office, a division of the DOF, 'for insubordination ánd failure to perform her job properly. Thereafter, McGowan appealed to the board, which assigned her appeal to an administrative-law judge (“the ALJ”). The ALJ held an evidentiary hearing and -subsequently issued an order recommending -that the DOF’s decision to dismiss McGowan be upheld. The board concurred with the ALJ’s recommendation and issued an order upholding - the DOF’s decision to dismiss McGowan. McGowan then sought judicial review of the board’s order in the circuit court. Following a hearing, the circuit court entered a judgment reversing the order of the board .on the ground that it was not supported by sufficient-evidence. The board then timely appealed to this court.[1]"..
*238 “The standard of appellate review to be applied by the circuit courts and by this court in reviewing the decisions of administrative agencies is the same. See Alabama Dep’t of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 384 (Ala.Civ.App.2008). That prevailing standard is deferential toward the decision of the agency:
“ ‘Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers.... Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.’
“Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989). Also, the Alabama Administrative Procedure Act provides that,
“ ‘[ejxcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.’
“Ala.Code 1975, § 41-22-20(k). ‘Neither this court nor the trial court may substitute its judgment for that of the administrative agency.’ Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App.1989).
“Further, this court does not apply a presumption of correctness to a circuit court’s judgment entered on review of an administrative agency’s decision ‘because the circuit court is in no better position to review an agency’s decision than this court.’ Alabama Bd. of Nursing v. Peterson, 976 So.2d 1028, 1033 (Ala.Civ.App.2007). Finally, in order for the Board’s decision to uphold the termination of an employee to warrant affir-mance, that decision would have to be supported by ‘substantial evidence,’ which in an administrative context is ‘relevant evidence that a reasonable mind would view as sufficient to support the determination.’ Ex parte Personnel Bd. of Jefferson County, 648 So.2d 593, 594 (Ala.Civ.App.1994).”
Alabama State Pers. Bd. v. Dueitt, 50 So.3d 480, 482 (Ala.Civ.App.2010).
The board first argues that the circuit court erred in concluding that the board’s order was not supported by sufficient evidence. We agree.
At the evidentiary hearing held by the ALJ, Pamela Harris, McGowan’s supervisor from 2009 until McGowan’s dismissal in 2012, testified on behalf of the DOF, and the DOF introduced 29 exhibits. Harris’s testimony and the DOF’s exhibits tended to prove the following. During her employment in the Comptroller’s Office, McGowan’s job responsibilities included auditing and processing claims (“mental-commitment claims”) from probate courts seeking reimbursement from the State for the costs of involuntary-mental-commitment proceedings adjudicated by those *239 courts. Sometime before April 2011, the Comptroller’s Office employed a part-time employee (“the part-time employee”) to assist with a pending lawsuit. The part-time employee also assisted McGowan with auditing and processing the mental-commitment claims and assisted other full-time employees of the Comptroller’s Office with their work. In April 2011, the part-time employee was laid off. When the part-time employee was laid off, McGowan indicated that she felt that the part-time employee’s work had been dumped on her despite the fact that auditing and processing the mental-commitment claims had been part of McGowan’s job responsibilities before.the part-time employee had been hired and continued to be one of McGowan’s job responsibilities while the part-time employee was employed by the Comptroller’s Office.
McGowan had performed her job well before the part-time employee- was laid off; however, after the part-time employee was laid off, McGowan’s job performance deteriorated dramatically, she became uncooperative with her coworkers, and she exhibited a defiant attitude when given instructions and guidance by Harris. McGowan fell behind in processing the mental-commitment claims, and, by January 2012,-there was a backlog of approximately 1,300 claims. As a result, Harris imposed a corrective-action plan ■ on McGowan in January 2012. In the written corrective-action plan, the DOF described the job-performance deficiencies and the undesirable attitudes that McGowan needed to change as follows:
“1. [Backlog] of unpaid mental commitment claims. Currently the mental commitments claims are over two months behind in processing and are not receiving a high enough priority in your daily work schedule. During these financial times, by not processing these claims on time the Probate Courts, attorneys, mental health administrators and sheriffs are not paid in an accurate and timely manner.-
“2. Your unwillingness to take direction from supervisor and lack of communication and cooperation with coworkers. Cooperation with co-workers and compliance to rules are not conducive to office operation, a friendly work environment or team work,”
A, mental-commitment’ claim could be audited and processed in a few minutes, and the ■ corrective-action plan required McGowan to audit and process 75 mental-commitment claims per day. It also required McGowan to verbally communicate with eoworkers in a cooperative and friendly manner, 'to be responsive to instructions and guidance from supervisors, and to refrain from engaging in antagbnistic behavior in response to instructions and guidance.
By March 21, 2012, McGowan had eliminated the backlog of mental-commitment claims;, however, .she still had- an uncooperative attitude in her interactions with coworkers and still exhibited a defiant attitude in response to instructions from Harris. Consequently, in April 2012, McGowan’s corrective-action plan was updated. The April 2012 update of her corrective-action plan identified the undesirable attitudes and behavior that McGowan needed to change as follows:
“1.. Your unwillingness to take direction from supervisor and lack .of communication and cooperation with.- coworkers (supervisors are co-workers). Your lack of direct verbal communication, responsive body language and active listening to and with co-workers are not conducive to office operations and do not: promote .an affable work environment or teamwork.”
*240 To correct these undesirable attitudes and behavior, the corrective-action plan stated that McGowan should verbally communicate in a cooperative and affable manner and refrain from engaging in antagonistic behavior in response to instruction.
Subsequently, MpGowan again fell behind on auditing and processing the mental-commitment claims, and, in August 2012, she was given a written warning regarding her job-performance deficiencies and undesirable attitude. When McGowan’s work and attitude still did not improve, she was given a written reprimand on August 24, 2012. That same day, McGowan was; referred to .the State’s employee-assistance program for assistance in eliminating the job-performance deficiencies and undesirable attitudes that had resulted in her written reprimand. In September 2012, when McGowan’s job performance and attitude still had not improved, she was notified that Harris had recommended that McGowan be given a three-day suspension. McGowan requested and was given a pre-suspension hearing. At the pre-suspension hearing, Harris testified on behalf of the DOF. McGowan’s counsel cross-examined Harris, but McGowan did not testify or call any witnesses to. testify on her behalf. Following the hearing, the hearing .officer recommended that McGowan be suspended for thr.ee days without pay for insubordination and failure to perform her job properly. In accordance with that recommendation, the DOF suspended McGowan from October 17, 2012, through October 19, 2012. After McGowan returned from her suspension, her attitude and job performance did not improve, and, consequently, she was dismissed pursuant to Rule 670-X-19-.01j Ala. Admin. Code (State Pers. Bd.j, which provides, in pertinent part:
“(1) In addition to any special rules issued by the various appointing authorities for the guidance of their employees, the following standard general work rules shall apply to all classified employees:
“(a) Violations that normally result in disciplinary actions of increasing severity:
[[Image here]]
“5. Failure to perform job properly-
[[Image here]]
“(b) More serious violations that may result in suspension or discharge on the first offense, considering work • record and length of service:

((

“2. Insubordination — Failure to follow an order; disobedience; failure to submit to. authority as shown by demeanor or words, with the one exception’ of not following an order which the employee has good reason to believe is unsafe or illegal.”
McGowan denied that she had been insubordinate or had failed to perform her job properly; however, it is apparent from his findings of fact that the ALJ did not find McGowan’s testimony credible in that regard.
“[0]ur review, just like that of the circuit court,- is limited to ascertaining whether the Board’s order is supported by ‘substantial evidence,’ ie„ ‘evidence of such weight and quality that fair-minded persons.in the exercise of impartial judgment can reasonably infer the existence of the fact sought to- be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); accord, Ex parte Williamson, 907 So.2d 407, 414-15 (Ala.2004) (applying West definition in administrative setting). In no event is a reviewing court ‘authorized to reweigh the evidence or to substitute its decisions as to *241 the weight and credibility of the evidence for those of the agency.’ Ex parte Williamson, 907 So.2d at 416-17.”
Alabama Bd. of Nursing v. Williams, 941 So.2d 990, 999 (Ala.Civ.App.2005).
We conclude that the evidence introduced by the DOF constituted substantial evidence that supported the board’s order upholding the DOF’s dismissal of McGowan and, therefore; that the circuit court erred in concluding that the board’s order was not supported by sufficient evidence. See Alabama State Pers. Bd. v. Dueitt, supra. Accordingly, we reverse the circuit court’s judgment and remand the cause with instructions for the circuit court to enter a judgment affirming the board’s order upholding the DOF’s dismissal of McGowan.[2]
■REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Before the circuit court entered its judgment reversing the board’s decision, the action now before us was consolidated with another action in which McGowan sought judicial review of another administrative decision. The judgment entered by the circuit court in the action now before us did not dispose of McGowan’s claim in the other consolidated action, and the circuit court had not '• certified the judgment entered in the action now before us as a final judgment pursuant to Rule 54(b), Ala. R. Civ, P., before the board filed its notice of appeal. See Hanner v. Metro Bank & Protective Life Ins. Co., 952 So.2d 1056, 1061 (Ala.2006) (holding that "trial court -must certify a judgment as final pursuant to Rule 54(b), Ala. R, Civ. P,, before a judgment on fewer than all the claims in a consolidated action can be appealed”). Therefore, the judgment entered in the action now before us was a nonfinal judgment when the board filed its notice of appeal. Accordingly, we reinvested the circuit court with jurisdiction to determine whether to certify *238 the judgment in the action now before us as a final judgment pursuant to Rule 54(b), and the circuit court subsequently entered an order certifying its judgment as a final judgment pursuant to Rule 54(b).

. Because the board's first argument is dis-positive, we do not reach its second argu-merit.