**AUSTAL USA, LLC**

v.

**ALABAMA DEPARTMENT OF LABOR.**

**2141072.**

Court of Civil Appeals of Alabama.

March 18, 2016.

---

John W. Bell, Matthew J. Bauer, and Kristin T. Parsons of Austal USA, LLC, Mobile, for appellant.

Joseph S. Ammons, gen. counsel, and Holly T. Sharp, asst. gen. counsel, Alabama Department of Labor, for appellee.

THOMAS, Judge.

Austal USA, LLC ("Austal"), appeals from a summary judgment of the Mobile Circuit Court ("the trial court") in favor of the Alabama Department of Labor ("the department").

Austal's principal place of business is located in Mobile where it builds ships for the United States Navy. Kenneth Johnson became employed by Austal as an electrician on May 9, 2012. On September 5, 2014, pursuant to Austal's "Drugs and Alcohol Zero Tolerance Policy" ("the drug policy"), Johnson was randomly selected for a drug test. Johnson submitted to a drug test ("the preliminary drug test") that was conducted on Austal's premises by a nurse employed by Austal; the preliminary drug test was positive for amphetamines and "M-amphetamines." Austal immediately offered Johnson a follow-up drug test ("the second drug test") that would be administered at the Industrial Medical Clinic at Austal's expense. Johnson refused to submit to the second drug test; Austal terminated Johnson's employment that same day.

Johnson subsequently filed a claim for unemployment-compensation benefits, which the department approved. Austal timely appealed that decision to an administrative-hearing officer and, subsequently, to the department's board of appeals; the administrative-hearing officer and the board of appeals each affirmed the department's decision to award Johnson unemployment-compensation benefits. Austal then filed an appeal to the trial court on January 6, 2015; the department filed an answer on February 11, 2015. On April 14, 2015, the department filed a motion for a summary judgment; Austal filed a cross-motion for a summary judgment on May 15, 2015. The trial court entered an order granting the department's motion for a summary judgment on August 17, 2015. Austal filed a timely notice of appeal to this court on September 25, 2015.

"Our standard of review of a summary judgment is well settled:

"'"The standard of review applicable to a summary judgment is the same as the standard for granting the motion...." *McClendon v. Mountain Top Indoor Flea Market, Inc.*, 601 So.2d 957, 958 (Ala.1992).

"'"A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment

as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present 'substantial evidence' creating a genuine issue of material fact— 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala.Code 1975, § 12–21–12; *West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870, 871 (Ala.1989)."

" '*Capital Alliance Ins. Co. v. Thorough–Clean, Inc.,* 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. *Alabama Republican Party v. McGinley,* 893 So.2d 337, 342 (Ala.2004).'

"*Pritchett v. ICN Med. Alliance, Inc.,* 938 So.2d 933, 935 (Ala.2006)."

*Smith v. Fisher,* 143 So.3d 110, 122–23 (Ala.2013).

 In its brief on appeal, Austal argues that Johnson should be disqualified from receiving unemployment-compensation benefits pursuant to § 25–4–78(3)a., Ala.Code 1975. Section 25–4–78 provides, in pertinent part:

"An individual shall be disqualified for total or partial unemployment:

" . . . .

"(3) Discharge for misconduct.

"a. If he was discharged or removed from his work for a dishonest or criminal act committed in connection with his work or for sabotage or an act endangering the safety of others or for the use of illegal drugs after previous warning *or for the refusal to submit to or cooperate with a blood or urine test after previous warning.* Disqualification under this paragraph may be applied to separations prior to separation from the most recent bona fide work only if the employer has filed a notice with the commissioner alleging that the separation was under conditions described in this paragraph in such manner and within such time as the director may prescribe."

(Emphasis added.) Section 25–4–78(3)a.(i), Ala.Code 1975, further provides, in pertinent part, that

"[a] confirmed positive drug test that is conducted and evaluated according to standards set forth for the conduct and evaluation of such tests by the U.S. Department of Transportation in 49 C.F.R. Part 40 or standards shown by the employer to be otherwise reliable shall be a conclusive presumption of impairment by illegal drugs.... Further, *no unemployment compensation benefits shall be allowed if the employee refuses to submit to or cooperate with a blood or urine test as set forth above,* or if the employee knowingly alters or adulterates the blood or urine specimen."

(Emphasis added.) The definition of an "otherwise reliable" drug test is set out in Alabama Admin. Code (Dep't of Labor), Rule 480–4–3–.28.

"In interpreting the provisions of an Act ..., a court is required to ascertain the intent of the legislature as expressed and to effectuate that intent. The legislative intent may be gleaned from the language used, the reason and necessity

for the act, and the purpose sought to be obtained by its passage. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."

*Tuscaloosa Cty. Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa Cty.,* 589 So.2d 687, 689 (Ala.1991) (citations omitted).

 The department argues that, in order for an individual to be disqualified for unemployment-compensation benefits under § 25–4–78(3), there must be "[a] confirmed positive drug test." § 25–4–78(3)a.(i). However, a plain reading of § 25–4–78(3) clearly indicates that a discharge for misconduct includes "the refusal to submit to or cooperate with a blood or urine test after previous warning." Section 25–4–78(3)a.(ii) provides:

"For purposes of paragraph a. and item (i) of paragraph a. of this subdivision, warning shall mean that the employee has been advised in writing of the provisions of the employer's drug policy and that either testing positive pursuant to the standards referenced above or the refusal to submit to or cooperate with a blood or urine test as set out in the above referenced standards could result in termination of employment. This written notification as herein described shall constitute a warning as used in paragraph a. and item (i) of paragraph a. of this subdivision."

The drug policy, which is included in the appellate record, states that

"[d]rug screening is also done on a random basis for all employees. Employees have the right to refuse to take the drug test; however, refusal will result in *immediate termination.*"

(Emphasis added.) Also included in the record is a "Receipt for Employee Handbook," which is signed by Johnson, indicating that he had received a copy of the employee handbook and that he agreed to read it and seek clarification regarding any of the policies that he did not understand. Johnson also confirmed to the administrative-hearing officer that he had received a copy of the drug policy.[1] Thus, Johnson was on notice that refusing to submit to a drug test would result in the termination of his employment.

The trial court concluded in its summary judgment that Austal terminated Johnson's employment for testing positive on the preliminary drug test and that, because the preliminary drug test did not comply with standards prescribed by § 25–4–78(3)a.(i), Johnson was not disqualified from receiving unemployment-compensation benefits under the statute. Austal argues that Johnson's employment was ultimately terminated because he refused to cooperate with the second drug test. In its letter requesting an appeal of the initial determination that Johnson was eligible for unemployment-compensation benefits, Austal stated that Johnson was terminated from his employment for testing positive on a 10–panel drug screen; however, the letter also stated that Johnson had declined the option for a "confirmation drug screen." Nick Robertson, who was employed by Austal as a human-resources coordinator, testified before the administrative-hearing officer that Johnson's em-

---

1. The transcript of the appeal to the administrative-hearing officer is included in the record on appeal.

ployment was terminated due to a "violation of our drug and alcohol policy." In response to the administrative-hearing officer's inquiry regarding why he did not consent to the second drug test, Johnson responded, "[u]m, I should have. I guess at the time I was, uh, 1) I wasn't feeling good 2) I was pretty upset," and "uh, 3) the head nurse done had told me it wasn't gonna do any good anyway." Although the results of the preliminary drug test may have prompted the second drug test, it is clear from the record that Johnson's employment was not terminated until *after* he refused to cooperate with the second drug test.

We note that the trial court's summary judgment focused solely on the preliminary drug test; however, nothing in the plain language of § 25–4–78(3) prohibits the use of an initial drug test to determine the need for a drug test compliant with the United States Department of Transportation ("DOT") standards or an otherwise reliable drug test. Austal does not dispute that the preliminary drug test did not meet the standards set forth by DOT or those for an otherwise reliable drug test. However, a careful reading of § 25–4–78(3)a. indicates that the determinative issue is whether Johnson refused to submit to a drug test after a previous warning. The trial court also stated in its summary judgment that there was no *requirement* that Johnson submit to the second drug test; however, it is clear from the record that Johnson was aware that declining the second drug test would result in the termination of his employment.

To be sure, the drug policy, as drafted, is far from a model of clarity. The drug policy provides details such as a definition of illegal drugs, the circumstances under which the use of prescription drugs would violate the policy, and the activities that are prohibited by employees who are un-

der the influence of drugs or alcohol. However, the drug policy is completely devoid of an established procedure for the physical administration of a drug test. Specifically, the drug policy does not articulate that employees who test positive on a preliminary drug test onsite will be required to submit to a second drug test. Moreover, the drug policy does not indicate whether the second drug test will require a new sample from the employee or if the second drug test will utilize the same sample used in the preliminary drug test.

The record in the present case confirms the confusion created by the lack of detail contained in the drug policy. Robertson stated to the administrative-hearing officer that Johnson "had the opportunity to have [the sample] reviewed by a Medical Review [ ]Officer, um, and he declined that." Robertson further indicated that review by a medical-review officer was not automatic, stating: "[T]hey can go and have it reviewed or if they decline, then we have a statement that they sign saying that they decline." Austal attached an affidavit of Chris Blankenfield, its health, safety, and environmental manager, to its motion for a summary judgment. Blankenfield stated in the affidavit as follows:

> "In the event an employee tests positive on an onsite drug test, Austal, at the employee's request, provides for a split sample confirmation drug screen, at Austal's expense, to be reviewed by a Medical Review Officer and conducted and evaluated pursuant to and consistent with the Department of Transportation drug-testing regulations and requirements."

Johnson testified before the administrative-hearing officer that he had been informed that his sample could be sent to a laboratory but that his understanding was that he would be suspended from working for three days while the sample was re-

viewed. Included in the record is a "refusal for drug screen confirmation," signed by Johnson, that stated that "Austal ... has offered for me to be transported to Industrial Medical Clinic for a confirmation drug screen that would be reviewed by a Medical Review Officer." However, as noted above, the drug policy is clear that refusal to submit to a drug test is a ground for termination of employment; the drug policy does not differentiate between a preliminary drug test and a second drug test.

Our supreme court held in *Ex parte Rogers*, 68 So.3d 773, 781 (Ala.2010), "that the employer has the burden of proving that the employee is disqualified for reasons of misconduct." As explained above, § 25–4–78(3)a. clearly states that the "refusal to submit to or *cooperate* with a blood or urine test after previous warning" constitutes misconduct under that statute. (Emphasis added.) The record is clear that Johnson failed to cooperate with the second drug test and that Johnson was aware that such failure would result in the termination of his employment. Because Austal presented evidence indicating that Johnson had been warned that refusing to take a drug test would result in immediate termination and that he still chose not to cooperate with the second drug test, we

conclude that the trial court erred by granting the department's motion for a summary judgment.

We do, however, note that § 25–4–78(3)a.(i) provides that no unemployment-compensation benefits shall be allowed for an employee that refuses a drug test "as set forth above," indicating that the refused drug test must also comply with the DOT standards or be "otherwise reliable." Notwithstanding Austal's assertions in the motions it filed in the trial court, we conclude that there remains a question of material fact regarding whether the second drug test met the requirements set out in § 25–4–78(3)a.(i). Therefore, we reverse the trial court's summary judgment, and we remand the case to the trial court for further proceedings consistent with this opinion.[2]

**REVERSED AND REMANDED.**

THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

[2.] Austal also presents an alternative argument in its appellate brief, specifically asserting that Johnson voluntarily left his employment and, therefore, was disqualified from receiving unemployment-compensation benefits pursuant to § 25–4–78(2), Ala.Code 1975. However, the record indicates that this argument was not raised until Austal's appeal to the trial court. Because " 'the [trial] court's jurisdiction was limited to a consideration of the issues properly raised and made of record before the [administrative agency],' " *Ex parte Williamson*, 907 So.2d 407, 416 (Ala.2004)(quoting *Joyner v. City of Bayou La Batre*, 572 So.2d 492, 493 (Ala.Civ.App. 1990)), that issue was not properly before the trial court. For that reason, we do not consider it on appeal.