BOLIN, Justice.
Chad Bostick petitioned this Court for a writ of certiorari seeking review of the Court of Civil Appeals’ opinion reversing the judgment of the Montgomery Circuit Court that reversed the administrative order issued by the Alabama Board of Examiners of Landscape Architects (“the Board”) suspending Bostick’s license for one year and imposing a $250 fine upon him pursuant to § 34-17-1 et seq., Ala. Code 1975. Alabama Bd. of Exam’rs of Landscape Architects v. Bostick, 211 So.3d 816 (Ala.Civ.App.2015). We issued the writ. We now reverse and remand.

*826
Facts and Procedural History

The Court of Civil Appeals set forth the following facts:
“The Board licensed Bostick as a landscape architect in 2009. At that time, Bostick was employed by GRC Design Group, Inc. (‘GRC’), a landscaping business owned and operated by Greg R. Curl. A dispute between Bostick and GRC arose, and Bostick resigned from his employment with GRC on January 15, 2010. Bostick then started his own landscaping firm. In February 2010, Curl filed a written complaint with the Board alleging that Bostick had, while employed with GRC, ‘misrepresented himself to clients as part owner in [GRC] and as a result had clients write checks payable to him which he cashed for his own personal use.’ Curl claimed that Bostick ‘admitted to stealing these design fees and eventually to several more acts of fraud.’ Bostick responded to the complaint by a letter in which he denied that he had violated the Board’s Code of Conduct and stated that ‘[t]he clients in question paid me directly for the intellectual property that I provided for them, and were completely satisfied with the work that they received. Their payment was not directed by me, nor was it based upon any misrepresentation or fraudulent act whatsoever.’
“On December 14, 2011, the Board brought an administrative complaint against Bostick, alleging three counts as a basis for disciplinary action: that Bos-tick’s ‘actions indicate fraud or deceit by [Bostick] and are therefore a violation of [§] 34—17—5(a)(5), [Ala.Code 1975,]’ that his ‘actions indicate negligence or willful misconduct and are therefore a violation of [§] 34—17—5(a)(6), [Ala.Code 1975,]’ and that his ‘actions indicate conduct involving fraud or wanton disregard of the rights of others and are therefore a violation of the Boardf’s] ... Code of Conduct Section 5(c).’ On February 15, 2013, a hearing was held before a hearing officer appointed by the Board. The hearing officer received testimony from Curl, Bostick, and GRC employee Brad Johnson. Bostick was represented by counsel. The hearing officer also accepted two affidavits from clients of GRC who had written checks to Bostick for work he had performed while he was employed by GRC. After the hearing was concluded, the hearing officer filed a recommended order with the Board, which contained the following findings of fact:
“ ‘Curl is the sole owner of GRC. He has been in business for eighteen years after receiving his degree in landscape contracting from Mississippi State. Curl met and hired Bostick in the late 1990’s.... Bostick was a subcontract employee for GRC for about six months, but then ... Curl allowed Bostick to become a full-time employee. Bostick’s job consisted of design and sales and eventually a Landscape Architect position when he was licensed on September 23, 2009.
“‘GRC paid Bostick a salary plus quarterly bonuses if GRC had a good quarter, based on Bostick’s work and the company as a whole. Curl testified that he did not have an agreement with Bostick that he could do outside design work....
“ ‘In 2009, ... Curl examined client files. Curl mentioned to Johnson that the Berry clients had not paid for their installation work, and Johnson said he saw one of the Berrys give Bostick a check. Johnson testified that Bostick did the design work on the project and would come on site occasionally. Johnson testified that one day in December 2009 when Bos-tick was on the site, one of the Berrys said, “Wait, I have a check to give you,” and gave Bostick a check.
*827 “ ‘Curl called the Berrys, who said they gave Bostick a $300.00 check and provided Curl with a copy of the cheek made out to and deposited by Bostick.
“ ‘Curl then checked the file of clients named Borden. The file contained a project proposal letter to the Bordens from Bostick on GRC letterhead dated June 10, 2009, in which Bostick refers to himself as a partner. Curl testified that Bostick was not authorized to represent himself as a partner and does not remember having any discussion with Bostick about Bostick becoming a partner or representing himself to clients as a partner. Bostick testified that he asked Curl if Bostick could use the term partner so that his proposals would have more credentials and Curl said yes.
“ ‘Curl then called the Bordens who said they paid Bostick several times, and they provided copies of three checks made out to and deposited by Bostick: one dated October 25, 2009, for $1094.30, another dated August 20, 2009, for $1305.80, and another dated December 7, 2009, for $802.60.... All of the checks were for invoices submitted by Bostick to the Bordens on GRC letterhead. The design for the Bordens has Bostick’s initials and GRC in the title block....
“ ‘Curl confronted Bostick about the checks, and Bostick finally admitted to taking the checks and resigned from GRC. On the advice of Curl’s CPA, Curl filed a 1099 for the checks paid directly to Bostick so that Curl would not have to pay payroll taxes on those amounts.... Bostick testified that he reported the checks paid to him from the Bordens and the Berrys to the IRS using the 1099 form.
“ ‘Bostick does not deny receiving the checks from clients, and testified he has no idea why they made the checks out to him directly. He testified he felt he was right to deposit the checks because he would have been paid a performance bonus at the end of the quarter. His position is that the payments from the clients would have been part of his bonus for that quarter. He was not stealing, in his belief, because of the loose agreement he had with Curl. But in previous years he had never taken payment from clients as part of his bonus. Bostick did not receive a bonus from GRC for the last quarter of 2009, and Curl testified that the money paid to Bostick from the clients could have become money in his performance bonus.
“ ‘Also, one invoice Bostick submitted to the Bordens included $360.00 for engineering work. Bostick did not perform any engineering work but cashed the check for the invoice that included engineering work and did not pay that money back to GRC.’
“The recommended order concluded:
“‘In the present case, the Board presented substantial evidence warranting disciplinary action against Bostick. The Board proved, and Bos-tick admitted in writing and at the hearing, that he deposited checks from clients totaling $2196.90 and did not submit the money to GRC, while he was working as a Landscape Architect for GRC. The total amount does not include a payment he received before he was a licensed Landscape Architect.
“ ‘No grounds for mitigation exist in this case.
“ ‘Accordingly, the undersigned finds the totality of the evidence warrants a suspension of Bostick’s license for no less than six months. Therefore, the undersigned recommends *828 [that the] Board ... SUSPEND Bos-tick’s license for no less than six months.’ ”
Bostick, 211 So.3d at 818-20.
On April 24, 2013, the Board entered an order in which it made the following findings of fact and conclusions of law:
“FINDINGS OF FACT
“The Board finds that Chad Bostick received checks from clients of GRC Design Group made payable to Bostick. The payments received by Bostick from clients of GRC Design Group were not submitted by him to GRC Design Group.
“The Board finds that Bostick was not authorized to receive payment directly from clients of GRC for his services made payable to Bostick.
“CONCLUSIONS OF LAW
“The Board finds that Bostick’s actions are in violation of Alabama Code Sectfon 34~17-5(a)(5) because they show fraud or deceit.
“The Board finds that Bostick’s actions are in violation of Alabama Code Section 34—17—5(a) (6) because they show negligence or willful misconduct.
“The Board finds that Bostick’s actions are in violation of the Board of Examiners of Landscape Architects Code of Conduct Section 5(c) because they show conduct involving fraud or wanton disregard of the rights of others.”
Although the Board adopted most of the hearing officer’s recommended order in its order, it imposed a more severe punishment-ordering that Bostick’s license be suspended for one year as opposed to six months; it also imposed upon Bostick the $250 fine. Bostick appealed the Board’s order to the trial court pursuant to § 41-22-20, Ala. Code 1975.
Following a hearing, the trial court, on May 22, 2014, entered a judgment reversing the Board’s order and finding as follows:
“The section of the [Board’s] Order labeled: ‘Findings of Fact’ contains no findings of fact on any significant disputed issues. It simply recited undisputed testimony and recited, but did not resolve, conflicting testimony on several relatively minor points.
“The only ‘finding’ made to support the charge of fraud in the [hearing officer’s] Recommended Order is a legal conclusion followed by a recitation of the undisputed facts regarding the deposit of ... three checks.[1] The following is found in the ‘Conclusions of Law’ section:
“‘In the present case, the Board presented substantial evidence warranting disciplinary action against Bostick. The Board proved, and Bos-tick admitted in writing and at the hearing, that he deposited checks from clients totaling $2196.90 and did not submit the money to GRC, while he was working as a Landscape Architect for GRC.’
“Neither the [hearing officer’s] Recommended Order nor the Board’s Order adopting it cited any evidence or made any specific finding that these deposits were made with fraudulent intent. The Board’s Order appears to equate the making of the deposit with fraud.
“Neither order addresses in any significant manner, the undisputed hearing testimony of Mr. Bostick and Mr. Curl that for the fourth quarter of 2009, GRC owed commissions to Mr. Bostick that exceeded the total of these three checks; and that under Mr. Bostick’s interpretation of his ‘very loose’ oral employment *829 agreement with GRC, Mr. Bostick was entitled to deposit these checks to his bank account in payment of those commissions ....
“The Board’s April 24th Order is even less clear about the basis for the Board’s conclusion that Mr. Bostick acted with fraudulent intent or was guilty of fraud, deceit, or willful misconduct, etc., in depositing these three checks. The Board’s Order states only in conclusory form that ‘the charges against Mr. Bos-tick have been substantially proved,’ ... and that Mr. Bostick’s actions ‘showed’ fraud or deceit, negligence or willful misconduct, and fraud or wanton disregard of the rights of others....
“Thus, the Board’s finding that Mr. Bostick was guilty of intentional fraud was based solely upon Mr. Bostick’s admitted act of depositing into his bank account three checks made payable to him by GRC’s clients and not immediately remitting their proceeds to his employer, GRC. No other actions taken by Mr. Bostick were cited or found by the Board to support its finding of fraud or its suspension of Mr. Bostick’s landscape architect’s license.”
Based on the foregoing findings, the trial court concluded:
“[T]he Board’s April 24, 2013, Order was (a) ‘affected by error of law,’ (b) ‘clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record,’ and (c) ‘unreasonable’ in view of the evidence presented; and ... the substantial rights of the petitioner, Mr. Bostick, were prejudiced by these errors.
[[Image here]]
“The only point of disagreement between Mr. Bostick and Mr. Curl was whether under their veiy loose, oral employment agreement, Mr. Bostick was entitled to deposit those three checks several weeks prior to the end of the fourth quarter of 2009 or was required to wait until the end of the quarter to be paid those sums and more as his fourth quarter commission.
“Mr. Bostick thought that he was entitled to deposit these checks in partial payment of the sums owed to him; Mr. Curl believed he was not. That difference of opinion in the interpretation of Mr. Bostick’s very loose oral employment agreement with Mr. Curl is what the Board’s charge of fraud rests upon.
“While contracting parties’ differing interpretations of their agreement may be the basis for a contract claim between the parties, those differing opinions not only do not constitute fraud, but are ‘not evidence of fraud,’ and therefore cannot ... support the fraud charge herein....
[[Image here]]
“The Board exceeded the authority granted it by statute by purporting to sanction Mr. Bostick in the total absence of evidence to support the charges against him. There was no evidence to support a finding of fraud. The reliable probative, and substantial evidence from the record as a whole shows—at the very least—that Mr. Bostick had a good faith claim for the funds he deposited. Any sanction against Mr. Bostick based on the evidence presented would be unreasonable, arbitrary, capricious, and an abuse of discretion.
“The Board is directed to enter an order finding Mr. Bostick not guilty of fraud or any other willful misconduct; to restore Mr. Bostick’s license to practice landscape architecture; and to dismiss the Complaint and all charges against Mr. Bostick.”
Following the denial of its postjudgment motion, the Board timely appealed the trial court’s judgment to the Court of Civil Appeals, arguing: (1) that the trial court applied an incorrect standard of review for *830 an order issued by an administrative agency and (2) that the authority the trial court relied upon was inapplicable. In reversing the trial court’s judgment, the Court of Civil Appeals stated:
“The trial court’s judgment noted that ‘Mr. Bostick thought that he was entitled to deposit these checks in partial payment of the sums owed to him; Mr. Curl believed he was not.’ Thus, the trial court reasoned, the Board’s finding of fraud was based on the determination of which party was credible. Whether Bostick had a ‘good faith’ belief that he was entitled to deposit the checks was a disputed fact largely dependent upon findings of credibility. That factual issue was resolved against Bostick by the Board following an administrative hearing based on testimony from the witnesses and documents submitted.
“ ‘[0]ur review, just like that of the circuit court, is limited to ascertaining whether the Board’s order is supported by “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); accord, Ex parte Williamson, 907 So.2d 407, 414-15 (Ala.2004) (applying West definition in administrative setting). In no event is a reviewing court “authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency.” Ex parte Williamson, 907 So.2d at 416-17.’
“Alabama Bd. of Nursing v. Williams, 941 So.2d [990] at 999 [(Ala.Civ.App.2005) ]. Accordingly, the factual finding that Bostick acted in ‘good faith’ could not be made by the trial court in the judicial-review process.
“Bostick testified before the hearing officer that he never instructed a client to pay him directly, and when asked why GRC’s clients would have made checks out to him personally, he claimed: T have no earthly idea.’ However, it is undisputed that, when Bostick received those checks from clients of GRC made payable to him, he deposited those checks in his personal bank account with the intent to retain those funds as payment for services provided to those clients in connection with Bos-tick’s employment with GRC and that he did not inform GRC that he had done so. Curl testified that Bostick was not authorized to receive payment directly to him or in his name for work done for GRC. Bostick testified that he had never previously been paid a ‘bonus’ by receiving payment directly from a client of GRC. Further, the hearing officer heard testimony from Curl, which, if believed, would indicate that, when he was confronted by Curl, Bostick denied receiving those cheeks or billing those clients and continued in his denial until he was confronted with copies of the checks he had received and deposited into his personal bank account.
“Considering the deference due the Board’s findings of fact, see § 41-22-20(k), [Ala.Code 1975,] there is substantial evidence to support the Board’s findings as well as the Board’s conclusion that Bostick engaged in acts of deceit and willful misconduct while in the practice of landscape architecture—specifically, that he accepted and kept for himself payments from clients that should have been delivered to GRC and that he denied having done so once his actions were discovered. The Act does not define the terms fraud, deceit, negligence, or willful misconduct as they are used in § 34-17-5(a)(5) and (a)(6), [Ala.Code 1975,] and the parties do not dispute the *831 meaning of those terms as an issue in this case. We note that ‘[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). Although Bostick argues that his actions merely amounted to ‘ “poor judgment” or “questionable ethics,” ’ rather than behavior sanctionable pursuant to § 34-17-5(a)(5) and (a)(6), this court has stated that ‘ “an agency’s interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.” Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala. Civ.App.1994).’ Colonial Mgmt. Grp., [L.P. v. State Health Planning & Dev. Agency ], 853 So.2d [972] at 975 [ (Ala.Civ.App.2002) ]. Although the trial court found no evidence of fraud and reversed the Board’s order on the ground that the Board had committed an error of law, see § 41-22-20(k)(5), [Ala.Code 1975,] our review of the trial court’s judgment is without any presumption of its correctness. Regardless of whether the Board received evidence as to all the elements of fraud, the record contains substantial evidence, which if believed by the Board, would support the Board’s findings and conclusion that Bostick engaged in acts of deceit and willful misconduct while in the practice of landscape architecture. We accordingly pretermit discussion of whether the trial court relied on inapplicable legal authority in reaching its judgment. See Dennis v. Holmes Oil Co., 757 So.2d 479, 482 (Ala.Civ.App.2000).
“Applying the deferential standard of judicial review of an administrative-agency decision, we hold that there were no grounds to set aside the Board’s administrative order and sanctions imposed against its licensee, Bostick.”
Bostick, 211 So.3d at 823-24. Bostick filed a petition in this Court for a writ of certio-rari, which we granted.

Standard of Review

The Court of Civil Appeals in its opinion set forth the appropriate standard of review applicable to an appeal from a decision of an administrative agency:
“ ‘[An appellate] court reviews a trial court’s judgment regarding the decision of an administrative agency “without any presumption of its correctness, since [the trial] court was in no better position to review the [agency’s decision] than” this court. State Health Planning & Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App.1985). Under the Alabama Administrative Procedure Act (“AAPA”), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
“‘“[ejxcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of *832 the petitioner have been prejudiced because the agency action is any one or more of the following:
“ ‘ “(1) In violation of constitutional or statutory provisions;
“ ‘ “(2) In excess of the statutory authority of the agency;
“ ‘ “(3) In violation of any pertinent agency rule;
“ ‘ “(4) Made upon unlawful procedure;
“ ‘ “(5) Affected by other error of law;
“ ‘ “(6) Clearly erroneous in view of the rehable, probative, and substantial evidence on the whole record; or
“‘“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
“ ‘§ 41-22-20(k), Ala.Code 1975.... In reviewing the decision of a state administrative agency, “[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.” Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993).... Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). “This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.” Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App.1989).’
“Colonial Mgrnt. Grp. [v. State Health Planning and Development Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002)] (emphasis omitted).”
Bostick, 211 So.3d at 822-23.

Discussion

Bostick argues, among other things, that the Board’s decision is not supported by the evidence presented and that the Board acted beyond its jurisdiction and authority in suspending his license to practice landscape architecture and in imposing a fine. We agree.
The Board was created by an act of the legislature for the purpose of regulating the practice of landscape architecture in Alabama, § 34-17-1 et seq., Ala.Code 1975. The legislature vested the Board with limited authority to pursue a disciplinary action against a licensee of the Board upon certain enumerated grounds set forth in § 34-17-5, Ala.Code 1975. Section 34-17-5 provides:
“(a) Each of the following facts shall constitute a ground for disciplinary action:
[[Image here]]
“(5) That, in the practice of landscape architecture, the holder of a certificate has been guilty of fraud or deceit;
“(6) That, in the practice of landscape architecture, the holder of a certificate has been guilty of negligence or willful misconduct;
[[Image here]]
“(b) For violations of the preceding subsection, or for violations of the provisions of this chapter, or for violations of board rules and regulations, the board shall have the following disciplinary powers:
“(1) To reprimand a board licensee;
*833 “(2) To levy an administrative fine against a licensee of the board not to exceed $250 per violation;
“(3) To refuse to issue a certificate to an applicant of the board;
“(4) To suspend a licensee’s certificate for a definite period of time; or
“(5) To revoke the certificate of a licensee. The board shall by rule and regulation adopt a disciplinary code.”
Section 34-17-1, Ala.Code 1975, defines the practice of landscape architecture as
“[t]he performance of professional services such as consultation, investigation, research, planning, design, preparation of drawings and specifications and responsible supervision in connection with the development of land areas where, and to the extent that the dominant purpose of such services is the preservation, enhancement, or determination of proper land uses, natural land features, planting, naturalistic and aesthetic values, the settings and approaches to structures or other improvements, the setting of grades and determining drainage and providing for standard drainage structures, and the consideration and determination of environmental problems of land including erosion, blight, and other hazards.”
As set forth above, the Board alleged that Bostick’s actions constituted “fraud or deceit,” a violation of § 34-17-5(a)(5); “negligence or willful misconduct,” a violation of § 34-17-5(a)(6); and “fraud or wanton disregard of the rights of others,” a violation of Section 5(c) of the Board’s Code of Conduct. The Board made absolutely no allegation that any clients of GRC Design Group, Inc. (“GRC”), had been harmed by Bostick’s alleged unauthorized acceptance and retention of client fees owed to GRC. The record is devoid of any charge that GRC clients did not receive the professional landscape-architecture services they had contracted to receive. The Board found that Bostick had violated the aforementioned sections based on its express finding that Bostick had
“received checks from clients of GRC Design Group made payable to Bostick. The payments received by Bostick from clients of GRC Design Group were not submitted by him to GRC Design Group.
“The Board finds that Bostick was not authorized to receive payment directly from clients of GRC for his services made payable to Bostick.”
The Court of Civil Appeals explained that Bostick’s acceptance and retention for himself of payments from clients that should have been delivered to GRC and his subsequent denial of having done so after his actions were discovered constituted substantial evidence that supported the Board’s finding that Bostick had “engaged in acts of deceit and willful misconduct while in the practice of landscape architecture." Bostick, 211 So.3d at 824. The Court of Civil Appeals acknowledged in reaching that conclusion that the act regulating the practice of landscape architecture does not define the terms “fraud,” “deceit,” “negligence,” or “willful misconduct” as those terms are used in § 84-17-5(a)(5) and (a)(6). However, the Court of Civil Appeals, citing IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992), for the proposition that words used in a statute should be given their commonly understood meaning, and Colonial Management Group v. State Health Planning & Development Agency, 853 So.2d 972 (Ala.Civ.App.2002), for the proposition that an agency’s interpretation of its own rule or regulation must stand if that interpretation is reasonable, determined that substantial evidence supported at least the Board’s decision that Bostick’s actions constituted “deceit” and “willful misconduct” as those terms are used in the act. We need not reach the decision *834 whether Bostick’s actions constituted “fraud,” “deceit,” “willful misconduct,” or the “wanton disregard of the rights of others” under the act regulating the practice of landscape architecture because, as explained below, Bostick’s actions did not occur while he was engaged “in the practice of landscape architecture” as the Board and the Court of Civil Appeals concluded.
Section 34-17-1 specifically defines the practice of landscape architecture as the “performance of professional services such as consultation, investigation, research, planning, design, preparation of drawings and specifications and responsible supervision in connection with the development of land areas.” (Emphasis added.) Bostick’s conduct here did not occur during the course of performing professional landscape-architecture services in any of the quoted examples listed in § 34-17-1. Rather, the Board’s express finding of wrongful conduct, i.e., the unauthorized receipt and retention of fees owed to GRC, upon which it based its disciplinary action occurred exclusively mthin the context of the employer-employee relationship, wrongful acts separate and apart from Bostick’s performance of professional services as a landscape architect. The only entity remotely affected by Bostick’s conduct was his former employer, GRC. No clients of GRC’s were harmed, or otherwise adversely affected, by Bostick’s conduct, and the Board has not asserted any claims or facts to the contrary. Rather, the clients, representing the public the Board was created to protect, received the work they had contracted for, and there was no attempt to double-bill the clients for work they had paid for and received. It is the Board’s purpose to protect the general public from incompetent and unscrupulous landscape architects. No member of the general public suffered any loss as a result of Bostick’s performance. See generally Gary Powers Dev., Inc. v. State Home Builders Licensure Bd., 852 So.2d 778 (Ala.Civ.App.2002) (discussing the purpose of regulatory boards in the context of home builders). It is not the Board’s purpose to wade into disputes arising in the context of the employer-employee relationship; rather, the civil and criminal courts are available to handle such disputes. Indeed, the facts suggest that the only point of dispute between GRC and Bostick was whether Bostick was authorized to receive and to retain the client fees under the “loosely” arranged employment agreement between Bostick and GRC. This dispute is in the nature of a contract claim suitable for resolution in a court of law, not a regulatory forum.
Although we recognize that deference should be afforded an interpretation placed on a statute or an ordinance by an administrative agency, where the language of the statute or ordinance is plain, this Court will not blindly follow an administrative agency’s interpretation, but will interpret the statute to mean exactly what it says. Ex parte Chesnut, 208 So.3d 624 (Ala.2016). “When it appears that the agency’s interpretation is unreasonable or unsupported by the law, deference is no longer due.” Alabama Dep’t of Revenue v. American Equity Inv. Life Ins. Co., 169 So.3d 1069, 1074 (Ala.Civ.App.2015). Here, the Board’s determination that the unauthorized acceptance of client fees by Bostick and his subsequent failure to remit those fees to GRC constituted statutorily mandated but wrongful performance of professional services as a landscape architect, as that term is defined by the act regulating the practice of landscape architecture, is both unreasonable and not supported by the plain language of the act. The Board, a regulatory licensing entity, was simply not vested with the authority to determine a matter that is essentially a dispute regarding compensation between *835 an employer and a former employee. Accordingly, we conclude that, based on the facts presented, the Board acted beyond the scope of its authority in suspending Bostick’s license and imposing a fíne upon him. We therefore reverse the judgment of the Court of Civil Appeals and remand the case to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, PARKER, MURDOCK, and MAIN, JJ,, concur.
SHAW and BRYAN, JJ., dissent.

. The three checks the trial court is referring to are the following checks: the $300 check from the Berrys and the $1,094.30 and $802.60 checks from the Bordens.