THOMAS, Judge.
Springhill Hospitals, Inc. ("Springhill"), and Infirmary Health System, Inc. ("Infirmary")(hereinafter referred to collectively as "the hospitals"), have appealed a judgment of the Montgomery Circuit Court affirming a decision of the Certificate of Need Review Board ("the CONRB") of the State Health Planning and Development Agency ("SHPDA") to deny the hospitals' petition for a declaratory ruling in which they sought to reverse the determination contained in a letter of nonreviewability ("LNR") that SHPDA's executive director had issued to Surgicare of Mobile, Ltd. ("Surgicare").
Background
This is the third appeal to this court regarding this litigation. We summarized much of the relevant background in Springhill Hospitals, Inc. v. State Health Planning & Development Agency, 224 So.3d 670, 671-72 (Ala. Civ. App. 2016), which involved the second appeal to this court:
"Surgicare owns an ambulatory surgery center ('ASC') in Mobile, and each of the hospitals[1 ] owns a facility in Mobile that provides the same services that Surgicare provides at its ASC. On August 4, 2014, Surgicare filed a request with SHPDA for an LNR pursuant to *957 Ala. Admin. Code (SHPDA), Rule 410-1-7-.02,[1] seeking a determination of whether a plan to expand its ASC was subject to the review of the CONRB. Providence [Hospital] and Infirmary thereafter submitted letters to SHPDA opposing Surgicare's request for an LNR. Springhill instead filed a complaint in the Montgomery Circuit Court against SHPDA and Surgicare seeking a declaratory judgment and injunctive relief. In February 2015, the Montgomery Circuit Court entered an order dismissing Springhill's complaint, specifically finding that it had not exhausted its administrative remedies. This court affirmed the Montgomery Circuit Court's judgment, without an opinion, on August 21, 2015. Springhill Hosps., Inc., d/b/a Springhill Mem'l Hosp. v. Surgicare of Mobile, Ltd., et al., 217 So.3d 861 (Ala. Civ. App. 2015)(table).
"On March 16, 2016, SHPDA's executive director, Alva Lambert, issued an LNR to Surgicare in which he stated that, '[a]ccording to the facts that have been provided, a Certificate of Need would not be required under Alabama law and the Alabama Certificate of Need Program Rules and Regulations for the proposed expansion.' On April 6, 2016, the hospitals, pursuant to Ala. Admin. Code (SHPDA), Rule 410-1-9-.01,[2] petitioned the CONRB for a declaratory ruling 'revers[ing] the reviewability determination dated March 16, 2016, issued by SHPDA's Executive Director regarding Surgicare's proposed expansion of its ASC.'
"On May 5, 2016, the CONRB issued a declaratory ruling denying the hospitals' petition. On May 25, 2016, the hospitals filed a notice of appeal to the Montgomery Circuit Court in which they indicated that jurisdiction was proper in that court under §§ 41-22-11 and 41-22-20(a), Ala. Code 1975.[2 ] That same day, the hospitals also filed a notice of appeal to this court in which they indicated that subject-matter jurisdiction was proper in this court under § 22-21-275(6), Ala. Code 1975. On September 12, 2016, the appeal to this court was submitted on the parties' appellate briefs, and, on September 15, 2016, we issued an order requiring the parties to submit letter briefs 'regarding the issue whether judicial review of the Certificate of Need Review Board's May 5, 2016, ruling is proper in this court under § 22-21-275(6), Ala. Code 1975, or is proper in the Circuit Court of Montgomery County under § 41-22-11(b), Ala. Code 1975.' See C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala. Civ. App. 2003) ('[A] court's lack of subject-matter jurisdiction may be raised at any time ... and may even be raised by a court ex mero motu.').
"___________________________
"[1] Rule 410-1-7-.02 was amended effective October 7, 2016, while the appeal was pending before this court. The parties and the CONRB operated under the version of this rule in effect before the amendment.
"[2] The Alabama Secretary of State's records indicate that SHPDA submitted an amended version of Rule 410-1-9-.01 in June 2016."
We ultimately dismissed the hospitals' second appeal after concluding that the legislature had not invested this court with subject-matter jurisdiction to consider direct appeals of declaratory rulings issued by the CONRB. Id. at 676.
Following our dismissal of the second appeal, the circuit court ordered *958 the parties to submit briefs, and it heard oral arguments of counsel at a hearing in April 2017 regarding the hospitals' request for judicial review of the CONRB's denial of their petition for a declaratory ruling. On April 6, 2017, the circuit court entered a judgment affirming the CONRB's denial of the hospitals' petition for a declaratory ruling, reasoning, in relevant part: "SHPDA's final decision denying [the petition] was rational, reasonably justified[,] and supported by substantial evidence of record." The hospitals filed a timely notice of appeal to this court on May 18, 2017. See § 41-22-21, Ala. Code 1975 ("An aggrieved party may obtain a review of any final judgment of the circuit court under Section 41-22-20[, Ala. Code 1975,] by appeal to the appropriate court to which the appeal or review lies."); § 12-22-2, Ala. Code 1975 ("From any final judgment of the circuit court ..., an appeal lies to the appropriate appellate court."); and § 12-3-10, Ala. Code 1975 ("The Court of Civil Appeals shall have exclusive jurisdiction of ... all appeals from administrative agencies other than the Alabama Public Service Commission.").
Standard of Review
" ' "[An appellate] court reviews a trial court's judgment regarding the decision of an administrative agency 'without any presumption of its correctness, since [the trial] court was in no better position to review the [agency's decision] than' this court. State Health Planning & Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala. Civ. App. 1985). Under the Alabama Administrative Procedure Act ('AAPA'), § 41-22-1 et seq., Ala. Code 1975, which governs judicial review of agency decisions,
" ' " '[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
" ' " '(1) Inviolation of constitutional or statutory provisions;
" ' " '(2) In excess of the statutory authority of the agency;
" ' " '(3) In violation of any pertinent agency rule;
" ' " '(4) Made upon unlawful procedure;
" ' " '(5) Affected by other error of law;
" ' " '(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
" ' " '(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.'
" ' "§ 41-22-20(k), Ala. Code 1975.... In reviewing the decision of a state administrative agency, '[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable *959 law.' Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala. Civ. App. 1993).... Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala. Civ. App. 1993). 'This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.' Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala. Civ. App. 1989).
" ' Colonial Mgmt. Grp. [v. State Health Planning and Development Agency, 853 So.2d 972, 974-75 (Ala. Civ. App. 2002) ](emphasis omitted).'
" [Alabama Bd. of Exam'rs of Landscape Architects v.] Bostick, 211 So.3d [816,] 822-23 [ (Ala. Civ. App. 2015) ]."
Ex parte Bostick, 211 So.3d 825, 831-32 (Ala. 2016).
Analysis
The hospitals contend on appeal that the CONRB erred by denying their petition for a declaratory ruling because, they say, under the relevant provisions of § 22-21-263, Ala. Code 1975, a part of Title 22, Chapter 22, Article 9 ("Article 9") of the Alabama Code 1975 (pertaining to the "Control and Regulation of Development of Certain Health Care Facilities"), Surgicare's proposed expansion of its ambulatory surgery center ("ASC") meets the definition of a "new institutional health service" for which Surgicare should be required to submit an application for a certificate of need ("CON application") that would be subject to review by the CONRB. In relevant part, § 22-21-263 provides:
"(a) All new institutional health services which are subject to this article[, i.e., Article 9,] and which are proposed to be offered or developed within the state shall be subject to review under this article. No institutional health services which are subject to this article shall be permitted which are inconsistent with the State Health Plan. For the purposes of this article, new institutional health services shall include any of the following:
"....
"(2) Any expenditure by or on behalf of a health care facility or health maintenance organization which, under generally accepted accounting principles consistently applied, is a capital expenditure in excess of two million dollars ($2,000,000) indexed annually for inflation for major medical equipment; in excess of eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation; in excess of four million dollars ($4,000,000) indexed annually for inflation for any other capital expenditure by or on behalf of a health care facility or a health maintenance organization. The index referenced in this subdivision shall be the Consumer Price Index Market Basket Professional Medical Services index as published by the U.S. Department of Labor, Bureau of Labor Statistics. The SHPDA shall publish this index information to the general public."
(Emphasis added.)
The parties agree that the appropriately indexed threshold for new annual operating costs was $1,102,881 when Surgicare requested an LNR for the proposed expansion of its ASC in August 2014. The March 16, 2016, LNR that SHPDA's executive director issued to Surgicare concluded, in relevant part:
*960 "You estimate that the cost of the proposed major medical equipment to be purchased for the four (4) new operating rooms is $2,200,000.00; new annual operating costs are proposed to be $980,000.00; and other capital expenditures are estimated to be $3,750,000.00, all below the current Certificate of Need review thresholds...."[3]
On appeal, the hospitals do not challenge the amounts of specific items that are included within Surgicare's projection of $980,000 for new annual operating costs. Instead, they assert that Surgicare has completely omitted from its projection certain "operating costs" that it should have included under "generally accepted accounting principles," or "GAAP," namely, depreciation, which they contend will increase Surgicare's new annual operating costs by at least $184,479 per year. Thus, according to the hospitals, Surgicare's new annual operating costs following its proposed expansion will actually be at least $1,164,479, thereby exceeding the relevant indexed threshold of $1,102,881 and qualifying Surgicare's proposed expansion as a new institutional health service for which it should be required to submit a CON application.
During the April 20, 2016, meeting at which the CONRB considered the hospitals' petition for a declaratory ruling, it heard oral arguments from the hospitals' counsel and Surgicare's counsel and permitted them to offer sworn testimony from witnesses with knowledge relevant to the LNR obtained by Surgicare regarding, among other things, depreciation. Specifically, the hospitals offered live testimony from James Stidham, the president of Healthcare Management Associates, Inc., who stated that he had been involved in the development of 44 surgery centers and that his "responsibilities [went] from strategic planning to preparing financial statements and reporting to board members." After explaining his calculations regarding the minimum amount of depreciation that Surgicare could expect to incur, which calculations he said were based on generally accepted accounting principles, Stidham stated the following regarding the nature of depreciation:
"Though it does not appear on a financial statement into a cash position, it is part of operating expenses without a doubt. Surgicare, the manager and part owner of the Mobile center, in their recent 10K[4 ] shows that they take depreciation. It shows up on their balance sheet. It shows up on their profit and loss, their statement of operations. It should be counted in these calculations because it is a real expense."
Stidham also offered the following in response to a question posed by a member of the CONRB, Dr. Michael Gosney:
"[Q:] A question. When you said depreciation is a real number, to me, being in the nonprofit hospital and being on the board, while depreciation is a real number, we've rarely funded depreciation for its real purpose, to replace the equipment we have. The only advantage I saw depreciation was reduce your income tax liability. And I can understand why [Surgicare] would put it on their balance *961 sheet to decrease their tax burden, and I can see why it should be an operating expense. We are just arguing over how big that number is; is that correct?
"[A:] That is correct. Most for-profits-and I will say every surgery center I've been involved in, it's been a strong recommendation and taken by the board to fully fund the depreciation. As you as a physician understand, technology is moving so rapidly that there's always a newer and better piece of equipment that the operating surgeons want. So if you're not prepared for it, you either incur more debt or you tell the physician no. The success of surgery centers are by being responsive to their operators."
Additionally, the record contains two affidavits that were executed by Stidham-one in September 2014 and one on April 19, 2016, i.e., the day before the CONRB's meeting. In the April 2016 affidavit, Stidham averred, in relevant part: "Surgicare has not included in its projected costs any costs for the depreciation of the capital improvements it will make, or the equipment it will purchase, as part of its proposed project. Under generally accepted accounting principles, depreciation of equipment and capital improvements is an operating expense."
In response to Stidham's April 2016 affidavit, Surgicare submitted to the CONRB an affidavit of its director of financial operations, Nathan Smith. In his affidavit, Smith averred, in pertinent part, that he held an accounting degree and that he had reviewed each of Stidham's affidavits. Regarding the hospitals' position on the nature of depreciation, Smith averred:
"9. Depreciation is not considered in determining whether the 'new annual operating cost' threshold is exceeded. The CON Rules provide specifically that depreciation is categorized as a 'non-operating' item, not an 'operating' item.
"10. The concept of 'operating expense' under generally accepted accounting principles ('GAAP') is used for the purpose of presenting financial statements, while the concept of 'operating costs' as described in the CON Rules is different. The CON Rules clearly reference 'depreciation' as [a] 'nonoperating' item in the Appendix to the CON Rules. See Ala. Admin. Code 410-1, Appendix A-11, Revised September 30, 2013.
"11. Paragraph 3 of Mr. Stidham's April 2016 Affidavit refers to his conclusions from his September 2014 Affidavit. Mr. Stidham's September 2014 Affidavit outlines his analysis of Surgicare's operating expenses.... Mr. Stidham specifically excludes depreciation in the Exhibit attached to his September 2014 Affidavit, labeling depreciation as one of the 'Expenses Incurred Not Used For LNR.' See Exhibit to 2014 Affidavit, a copy of which is attached hereto.
"12. [The hospitals'] assertions that depreciation costs must be included in determining 'new annual operating costs' for purposes of the LNR thresholds are based on Mr. Stidham's conclusions in the April 2016 Affidavit that adding depreciation costs to the operating costs would exceed the CON financial thresholds for new annual operating costs. Such assertions by [the hospitals] directly contradict Mr. Stidham's express exclusion of depreciation expenses as described in his September 2014 Affidavit.[5 ]
*962 "13. I have reviewed Mr. Stidham's CV, included within Exhibit D to the Petition and labeled as Exhibit D to Springhill's Complaint For Declaratory Judgment and Injunctive Relief in the Circuit Court of Montgomery County, Alabama, CV 2014-901553 [i.e., the initial action Springhill commenced in the circuit court]. It appears that Mr. Stidham is neither an accounting expert nor a financial reporting expert. Mr. Stidham has degrees in marketing and business administration with a focus on management. He is a certified administrator of Surgery Centers, and his related professional experience is not in accounting.
"14. Based on my experience as the Director of Financial Operations at [Surgicare], a publicly-traded professional management company of ambulatory surgery centers, my professional experience, and my review of the CON Rules, it is my opinion that depreciation is not an annual operating cost which results from a capital expenditure under the CON Rules. Rather, depreciation is an accounting expense item for financial reporting purposes under GAAP, which is the counter journal entry to reduce the value of an asset on a company's balance sheet."
(Emphasis omitted.)
Smith also testified live at the April 20, 2016, meeting regarding the affidavit quoted above and had the following relevant exchange with the chairman of the CONRB, Dr. Neal Morrison:
"[Smith:] I would further add that Alabama Code for the CON lists depreciation, taxes, and interest, which we used when we were completing the LNR as a basis for understanding to exclude depreciation. Now, we would all agree that depreciation under GAAP is an operating expense. That's a true statement. For the purposes of the CON and the LNR process, we excluded depreciation. So this is really an issue of-
"[Dr. Morrison:] All right.... One of [the hospitals' attorneys] says, though, [for] the LNR you really are supposed to because of our own rules and regulations and the CON is totally separate. So if you were supposed to include it *963 and now you're saying you didn't include it, why didn't you include it?
"[Smith:] Because our understanding of the regulation was that it was not included."
The appendix to SHPDA's administrative regulations that is referenced in Smith's affidavit was also discussed at the April 20, 2016, meeting and is relied upon by Surgicare and SHPDA on appeal. That document is SHPDA's form CON application, and a revised version of that document can be found at Ala. Admin. Code (SHPDA), Chapter 410, Appendix A. In the sections of the form CON application regarding the CON applicant's organizational financial information and project-specific financial information, CON applicants are asked to report depreciation under sections entitled "non-operating expenses." Id. at 12-13. In the relevant portions of the CONRB's ruling on the hospitals' petition, it summarized the arguments and evidence noted above and concluded that the petition should be denied "for the reasons set forth in the Agency's March 16, 2016[,] LNR."
Citing, among other cases, Ex parte Jones Manufacturing Co., 589 So.2d 208, 210 (Ala. 1991), the hospitals argue on appeal that, although the CONRB's decision is entitled to deference, SHPDA is not permitted to exceed its legislative mandate regarding regulation of new institutional health services by ignoring the plain language of § 22-21-263(a)(2), which, as already noted, requires adherence to generally accepted accounting principles when considering new annual operating costs. They contend that depreciation is treated as an operating expense under generally accepted accounting principles. In support of their argument, the hospitals cite a Web site that appears to be maintained by the American Institute of Professional Bookkeepers, which they say shows depreciation to be an operating expense.[6] They also point to the portion of Smith's testimony in which he stated: "[W]e would all agree that depreciation under GAAP is an operating expense. That's a true statement." Thus, the hospitals contend, depreciation expenses should have been included in Surgicare's projection of its new annual operating costs.
Among other things, Surgicare argues in its appellate brief that the hospitals are "invit[ing] th[is] Court to conflate 'operating expense' with the term 'operating cost.' " In other words, Surgicare contends that, under generally accepted accounting principles, a distinction exists between an "operating expense" and an "operating cost," although it does not thoroughly explain the theoretical underpinnings supporting that distinction. In defense of the CONRB's decision, SHPDA principally argues that Surgicare properly excluded depreciation expenses from its projection because such expenses do not represent an expenditure, i.e., the first limiting criterion set forth in § 22-21-263(a)(2). SHPDA points to the definitions of "expenditure" that are provided by Black's Law Dictionary: "1. The act or process of spending or using money, time, energy, etc.; esp., the disbursement of funds < the expenditure of time and money on one's professional endeavors>. 2. A sum paid out < expenditures on research and development>." Black's Law Dictionary 698 (10th ed. 2014). Because depreciation is a "non-cash item," it says, such expenses do not fall within the category of "operating costs" described in § 22-21-263(a)(2).
In their reply brief, the hospitals respond by arguing that there is no meaningful *964 distinction between the plain and ordinary understanding of the terms "expense" and "cost," noting the similarities between the definitions of each term that are provided by Black's Law Dictionary. They assert that the terms "are essentially one in the same." In so doing, they also state their belief that the question raised by this appeal is one of first impression.
Article 9 does not mention depreciation or explain how it should be defined or treated for any purpose relevant to SHPDA's administrative authority. However, we nevertheless begin our consideration of this question by examining the definitions set out in § 22-21-260, Ala. Code 1975, remaining mindful of the following principles:
" ' "The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute.... In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses ... and words are given their plain and usual meaning.... Moreover, just as statutes dealing with the same subject are in pari materia and should be construed together, ... parts of the same statute are in pari materia and each part is entitled to equal weight." '
"[ Lambert v. Wilcox Cty. Comm'n, 623 So.2d 727, 729 (Ala. 1993) ]( [q]uoting Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So.2d 1378, 1380-81 (Ala. 1979).)"
First Union Nat'l Bank of Florida v. Lee Cty. Comm'n, 75 So.3d 105, 112 (Ala. 2011). Moreover, "[a]ll words of a statute are to be given effect, where possible." Alabama Bd. of Pardons & Paroles v. Brooks, 802 So.2d 242, 247 (Ala. Civ. App. 2001) (citing Ex parte Darnell, 262 Ala. 71, 76 So.2d 770 (1954) ).
The only relevant term of § 22-21-263(a)(2) that is expressly defined by § 22-21-260 is "capital expenditure," and § 22-21-260 provides, in relevant part:
"As used in this article[, i.e., Article 9], the following words and terms, and the plurals thereof, shall have the meanings ascribed to them in this section, unless otherwise required by their respective context:
"....
"(3) Capital expenditure. An expenditure, including a force account expenditure (i.e., an expenditure for a construction project undertaken by the health care facility as its own contractor), which, under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance and which satisfies any of the following:
"a. Exceeds two million dollars ($2,000,000) indexed annually for inflation for major medical equipment; eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation; four million dollars ($4,000,000) indexed annually for inflation for any other capital expenditure. The index referenced in this paragraph shall be the Consumer Price Index Market Basket Professional Medical Services index as published by the U.S. Department of Labor, Bureau of Labor Statistics. The SHPDA shall publish this index information to the general public."
(Emphasis added.)
This definition offers some assistance in our construction of § 22-21-263(a)(2). As it relates to "operating costs," § 22-21-263(a)(2), could, in a vacuum, be reasonably read in two ways: (1) "Any expenditure... which... is a capital expenditure... in excess of eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation" (emphasis added), or (2) "Any expenditure...
*965 which ... is ... in excess of eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation" (emphasis added). In other words, § 22-21-263(a)(2) could refer either to "operating costs" that are "capital expenditures," as that term is defined by § 22-21-260(3) a., or to all "operating costs" that are "expenditures," regardless of whether they fall within the definition of "capital expenditures" provided by § 22-21-260(3) a.
However, it is immediately apparent that the definition of "capital expenditure" that is provided by § 22-21-260(3) a. is nearly identical to the criteria following that term that are set out in § 22-21-263(a)(2).[7] Because of the nearly identical language employed, we view the legislature's inclusion of the term "operating costs" in § 22-21-263(a)(2) as a reference to the same type of "operating costs" that are described in the definition of "capital expenditure" provided by § 22-21-260(3) a.[8] See First Union Nat'l Bank of Florida, 75 So.3d at 111-12.
Although SHPDA cites Ala. Admin. Code (SHPDA), Rule 410-1-2-.07(a), which provides a definition of "capital expenditure" that is nearly identical to the definition provided by § 22-21-260(3) a., it neither offers analysis regarding that regulation nor explains the manner in which it should, if at all, operate on the facts of this case. Moreover, the parties have not cited § 22-21-260(3) a. or discussed the definition of "capital expenditure" provided therein. In attempting to ascertain the legislative intent underlying § 22-21-263(a)(2), however, we must also give equal effect to the provisions of § 22-21-260(3) a. See First Union Nat'l Bank of Florida, 75 So.3d at 111-12.
In adhering to that principle, we note that § 22-21-260(3) a. expressly excludes from the definition of "capital expenditure" expenditures that are, "under generally accepted accounting principles, ... properly chargeable as an expense of operation and maintenance." (Emphasis added.) Conversely, "operating costs" that exceed the appropriate threshold are expressly included within the definition. Id. (Emphasis added.) "A legislature will not be presumed to use language without any meaning or application." McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807 (1947). Thus, the plain language of § 22-21-260(3) a. indicates that the legislature intended to acknowledge a distinction between "expense[s] of operation" and "operating costs," as those terms are used in this context.
Moreover, the legislature's reference to generally accepted accounting principles suggests that "expense" and "cost" are terms of art that have a specified meaning within the field of accounting and that the conceptual distinction between those terms is more fully articulated and developed by those principles.
"The general rule that words should be construed according to their usual, natural, plain, ordinary, and commonly understood usage does not apply to technical words and phrases that have a peculiar meaning. Words and phrases that have acquired a technical meaning, *966 whether by legislative definition or otherwise, generally are considered to have been used in their technical sense."
82 C.J.S. Statutes § 418 (2009) (footnotes omitted). As already noted, the parties have failed to cite or address § 22-21-260(3) a. and, therefore, have also failed to discuss the legislature's decision to contrast "expense[s] of operation" with "operating costs" in Article 9. To resolve the inquiry presented by this appeal, however, it is sufficient that we simply notice the distinction set out in § 22-21-260(3) a., and we will therefore refrain from speculation regarding the manner of ways in which the language of § 22-21-260(3) a. could or should have impacted the parties' consideration of Surgicare's projected new annual operating costs.
As noted above, the hospitals argue that there is no meaningful distinction between an "expense" and a "cost" for the purposes of § 22-21-263(a)(2). The language of § 22-21-260(3) a. indicates otherwise. In other words, assuming that depreciation should be characterized as an "operating expense" under generally accepted accounting principles, § 22-21-260(3) a. indicates that an "operating expense" is not necessarily, in every circumstance, an "operating cost" under generally accepted accounting principles and, in turn, Article 9. Thus, we are not convinced by the hospitals' argument that the terms "expense" and "cost" are necessarily synonymous such that the evidence presented at the CONRB's April 20, 2016, meeting regarding the nature of depreciation as an expense clearly renders its denial of their petition for a declaratory ruling an erroneous violation of the legislative mandate set out for SHPDA in § 22-21-263(a)(2).[9] Thus, we should affirm the circuit court's judgment so long as the CONRB's interpretation and application of § 22-21-263(a)(2) is reasonable. See Ex parte Bostick, 211 So.3d at 831-32.
As already mentioned, SHPDA argues that Surgicare properly excluded depreciation from its $980,000 projection of new annual operating costs because depreciation is not an "expenditure," as that term is used in § 22-21-263(a)(2). The legislature has not defined the term "expenditure," as it is used in § 22-21-263(a)(2). "[W]hen a term is not defined in a statute, the commonly accepted definition of the term should be applied." Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala. 2003). SHPDA bases its decision on the definitions of "expenditure," provided by Black's Law Dictionary, which, it contends, contemplate an outlay of cash, and the evidence presented indicating that depreciation is a "non-cash item." Moreover, SHPDA points to its form CON application, which categorizes depreciation as a "non-operating expense." SHPDA's special competence regarding § 22-21-263(a)(2) lends great weight to its decision. See Ex parte Bostick, 211 So.3d at 831-32.
*967 To the extent that "expenditure" constitutes a term of art under generally accepted accounting principles with a different technical meaning that would otherwise affect our understanding of § 22-21-263(a)(2), the record contains no such evidence or argument. Although reasonable minds might differ on the issue whether Surgicare should be required to submit a CON application under § 22-21-263(a)(2) in this case, neither the circuit court nor this court is permitted to substitute its judgment for SHPDA's judgment under such circumstances. See id. We therefore affirm the circuit court's judgment. In so doing, however, we emphasize that our decision is based solely on the arguments and evidence presented by the briefs and record before us.
AFFIRMED.
Thompson, P.J., and Pittman and Moore, JJ., concur.
Donaldson, J., recuses himself.

Providence Hospital was an appellant in Springhill Hospitals and was therefore included within the group of parties collectively referred to therein as "the hospitals." Providence Hospital is not a party to this appeal.

The record in this appeal indicates that the hospitals also filed a timely petition for judicial review in the circuit court on June 24, 2016. See § 41-22-20(d), Ala. Code 1975.

In a March 11, 2016, letter to SHPDA's executive director, Surgicare provided a breakdown of its $980,000 projection for new annual operating costs, which included $263,578 for staffing costs, $272,050 for medical supplies and drugs, $58,538 for "proportional" expenses, $45,606 for bad-debt expenses, $85,226 for management fees, $246,197 for "other costs," and $8,805 as a " 'round[-]up' cushion."

We presume that Stidham is referring to a Form 10-K, which is an annual report that certain companies are required to submit to the United States Security and Exchange Commission.

Whether Stidham's April 2016 affidavit conflicts with his September 2014 affidavit was a point of contention at the April 20, 2016, meeting. The attachment to Stidham's September 2014 affidavit is intended to show possible projections of Surgicare's "new operating expenses," which are divided into three columns: "Low," "medium," and "high." Specific expenses within each column are provided by line item and are organized into two groups: "Incremental expenses" and "expenses incurred not used for LNR." Each group is followed by a line item that provides the total amount for that group, and a line item is listed near the end of each column that provides a total amount for all expenses, i.e., the expenses included within both groups combined.
The hospitals argued that Stidham included depreciation within the group of "expenses incurred not used for LNR" in the attachment only because Surgicare had not used those expenses in its $980,000 projection. Surgicare responded by noting that Stidham's projections, as set forth in the conclusion portion of his September 2014 affidavit, appear to reference only the total amounts for the group of "incremental expenses," provided on the attachment, which, as already explained, did not include depreciation. The hospitals contended that the purpose of Stidham's affidavit was to rebut Surgicare's calculations and that Stidham's attachment had therefore provided the line item combining both groups of expenses for that purpose.
In its appellate brief, Surgicare asserts that Stidham could not have known whether it had excluded depreciation from its $980,000 projection when he executed his affidavit in September 2014 because it did not provide a description of the costs included within that projection until February 2016, in response to a request from SHPDA for additional information. The hospitals do not address either of Stidham's affidavits in either their principal appellate brief or their reply brief. In the "statement of facts" section of their principal appellate brief, however, the hospitals state that SHPDA asked Surgicare to provide a "detailed breakdown of its cost projections" in October 2014 and that Surgicare did not provide the requested breakdown until "[m]ore than a year later."

The material from the Web site cited by the hospitals is not in the record on appeal, but Surgicare states in its appellate brief that the information cited by the hospitals was provided to the CONRB at its April 20, 2016, meeting.

We recognize that simply substituting the term "capital expenditure" as it is used in § 22-21-263(a)(2) with the definition of that term provided by § 22-21-260(3) a. would render § 22-21-263(a)(2) incredibly redundant by listing what appear to be the same criteria twice. Because reading § 22-21-263(a)(2) in such a manner would create such an unusual construction, we are guided by the legislature's admonition in § 22-21-260 to consider the definitions provided therein according to the context in which the relevant terms are used.

We note that Ala. Admin. Code (SHPDA), Rule 410-1-4-.01(1)(b), which discusses new institutional health services, appears to construe § 22-21-263(a)(2) in a similar manner.

In their principal appellate brief, the hospitals cite Alabama Medicaid Agency v. Beverly Enterprises, 521 So.2d 1329 (Ala. Civ. App. 1987), which they contend is "remarkably similar" to the facts of this case because, they say, the administrative agency in that case had also failed to follow generally accepted accounting principles in violation of its own regulations. In their reply brief, they cite Ex parteWilbanks Health Care Services, Inc., 986 So.2d 422 (Ala. 2007), for a similar proposition. The hospitals also point to other SHPDA decisions in which they contend that generally accepted accounting principles were applied, thereby, they say, rendering its decision in this case arbitrary and capricious. As is discussed above, however, it is not apparent, based on this record, which includes the hospitals' assertion that depreciation is an operating expense, that excluding depreciation from the category of "operating costs" that are referenced in § 22-21-263(a)(2) necessarily violates generally accepted accounting principles.